439 So.2d 444 (1983)
A.C. WHATLEY, Plaintiff-Appellee,
v.
Bonnie Friday WHATLEY, Defendant-Appellant.
No. 15476-CA.
Court of Appeal of Louisiana, Second Circuit.
June 6, 1983.
On Rehearing September 20, 1983.
*445 Whitehead & McCoy by C.R. Whitehead, Jr., Natchitoches, for defendant-appellant.
Horton & Jones by William R. Jones, Coushatta, for plaintiff-appellee.
Before HALL, JASPER E. JONES and NORRIS, JJ.
HALL, Judge.
After obtaining a separation from bed and board from her husband, Mrs. Whatley petitioned for a partition and accounting of community property. Mr. Whatley answered, alleging that Mrs. Whatley's separate estate was indebted to the community and to his separate estate in an amount in excess of the value of her interest in the community, and accordingly her interest in the community had a negative value.
The principal item in dispute on trial of the matter was the status of $31,928 received shortly before the community was terminated for a five-year paid-up oil, gas, and mineral lease of Mr. Whatley's separate property. The trial court held that the amount received should be prorated over the five-year primary term of the lease, with the community getting credit for the part of the payment attributable to the period between execution of the lease and *446 termination of the community and Mr. Whatley's separate estate getting credit for that part of the payment attributable to the period between termination of the community and the end of the five-year term. Taking into account other debts and assets, the trial court then concluded that Mrs. Whatley owed Mr. Whatley more than the value of her interest in the community. Judgment was rendered rejecting her demands for a partition and an accounting, and she appealed.
While the partition proceeding was pending, Mr. Whatley petitioned for a final divorce and Mrs. Whatley reconvened for alimony. After trial, judgment was rendered granting the divorce and rejecting Mrs. Whatley's claim to alimony, and she appealed from that part of the judgment denying alimony.
The appeals have been consolidated in this court and both appeals are considered and decided in this opinion.
Partition and Accounting
After about eight months of marriage, Mr. and Mrs. Whatley separated in November 1981. He filed suit for separation on December 3 and Mrs. Whatley filed a reconventional demand for separation on December 16, 1981. By judgment signed on March 4, 1982, Mr. Whatley's demands were denied and Mrs. Whatley was awarded a judgment of separation. The parties agree that the community was terminated as of the date Mrs. Whatley filed her reconventional demand, December 16, 1981. LSA-C.C. Art. 155.
On October 28, 1981 Mr. Whatley granted an oil, gas, and mineral lease on 307 acres of land which is his separate property. The lease is for a five-year primary term and is a "paid-up" lease, that is, it does not provide for delay rentals. A draft for $31,928 was given to Mr. Whatley on October 30, but was not paid until December 15, 1981, one day prior to dissolution of the community.
The trial court found it illogical for Mrs. Whatley to receive one-half of the lease payment which covered a five-year period simply because she happened to be the wife of the lessor at the time of execution of the lease and payment of the total amount applicable to the entire lease period. The court felt "bound in law and equity" to apportion the consideration commensurate with the period the community existed from the inception of the lease to the dissolution of the community. Finding that the community existed for 49 days subsequent to execution of the lease, which is 2.68 percent of the total term of the lease, the court held that $857.24 was attributable to the community.
Appellant Mrs. Whatley contends that the consideration for the oil, gas, and mineral lease, whether considered as bonus or rental or both, is community property under the express provisions of LSA-C.C. Art. 2339 which provides:
"The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases are community property. Nevertheless, a spouse may reserve them as his separate property by a declaration made in authentic act or in an act under private signature duly acknowledged.
"As to the fruits and revenues of immovables, the declaration is effective when filed for registry in the conveyance records of the parish in which the immovable property is located. As to fruits of movables, the declaration is effective when filed for registry in the conveyance records of the parish in which the declarant is domiciled."
The equitable appeal of appellee's argument and the trial court's decision must yield to the positive expression of law contained in LSA-C.C. Art. 2339. Bonuses, delay rentals, royalties, and shut-in payments arising from mineral leases "are community property." The express provision of Article 2339, enacted by Act 709 of 1979, effective January 1, 1980 as part of the comprehensive revision of matrimonial regime laws, codifies and continues the rule *447 of Milling v. Collector of Revenue, 220 La. 773, 57 So.2d 679 (1952) and McElwee v. McElwee, 255 So.2d 883 (La.App. 2d Cir. 1971), which held that mineral lease payments are civil fruits which fall into the community.
The status of property as community or separate is fixed at the time of its acquisition. Vining v. Beatty, 161 So.2d 298 (La.App. 2d Cir.1964). Property is either separate or community, not mixed. Curtis v. Curtis, 403 So.2d 56 (La.1981). There is no authority for reclassifying community property after dissolution of the community, or for apportioning a part thereof to the separate estate of one of the spouses.
Under LSA-C.C. Art. 2344 personal injury damages are given special treatment, but no such special treatment is provided for mineral lease payments. The pension and retirement plan cases, such as T.L. James Co., Inc. v. Montgomery, 332 So.2d 834 (La. 1975), are not analogous because they deal with payments received or to be received after dissolution of the community. The same is true of West v. Ortego, 325 So.2d 242 (La.1975), dealing with workers' compensation benefits, and Broussard v. Broussard, 340 So.2d 1309 (La.1976), dealing with interest on savings certificates, both involving payments made after dissolution of the community.
The mineral lease payment received during the existence of the community is community property, and Mr. Whatley is required to account to Mrs. Whatley for her one-half community interest in the amount of the payment.
Neither party disputes the findings of the trial court as to other items of assets and debts involved in the partition and accounting. Taking the trial court's finding on these other items, and considering the lease payment for which Mr. Whatley must account, it appears that the net result is that Mr. Whatley owes Mrs. Whatley $15,451.85 in settlement of the community and the respective claims of the parties' separate estates. The judgment in the partition action will be reversed and set aside and the partition action will be remanded for further proceedings to complete the partition and accounting in accordance with the views expressed in this opinion.
Alimony
Prior to her marriage to Mr. Whatley in April 1981, Mrs. Whatley worked as a postmaster earning about $24,000 annually. She left her job when she married and began drawing disability retirement benefits of $770 per month, out of which about $100 is deducted for life and hospitalization insurance. She cares for an eight-year-old grandson whose father pays her $200 per month and other expenses of the child. She has about $50,000 equity in her home. Her monthly expenses total about $800. She has no significant debts.
Mr. Whatley is 61 years old and a painting contractor by trade. His income from painting has been minimal the past year or so. He lives on and runs cattle on his 307-acre farm, which he estimated to be worth about $500,000 and which is paid for. His farm operation showed a loss for 1981.
We find no abuse of discretion by the trial court in denying alimony. Mrs. Whatley's income, means, and assets are sufficient for her support. LSA-C.C. Art. 160. The trial court's decision is bolstered by the fact that under the decision of this court, Mrs. Whatley will receive a substantial payment in settlement of the community, adding to her means.
Decree
The judgment of the district court signed January 20, 1983 denying Mrs. Whatley's claims against the community is reversed and set aside. The action for partition and accounting of the community is remanded to the district court for further proceedings in accordance with the views expressed in this opinion.
The judgment of the district court signed December 9, 1982 granting a divorce and denying Mrs. Whatley's claim for alimony is affirmed.
Costs of the appeals are assessed one-half to Mr. Whatley and one-half to Mrs. Whatley.

*448 ON REHEARING
Before PRICE, HALL, JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
HALL, Judge.
The original opinion rendered in this matter resolved the principal issue presented by this appeal, that is, the status of the oil and gas lease payment. In the original opinion we indicated that neither party disputed the findings of the trial court as to other items of assets and debts involved in this partition and accounting. Mr. Whatley's rehearing application correctly called to our attention the fact that, in brief, he had complained of the trial court's rulings regarding some of the other items disputed in this case. Consequently, we granted a rehearing limited to a consideration of the correctness of the trial court's rulings concerning those other items.
Mrs. Whatley contends that we should not consider Mr. Whatley's arguments on those other items because he did not take an appeal or answer her appeal. This argument is not well taken.
The trial court's judgment was entirely favorable to Mr. Whatley. That judgment rejected Mrs. Whatley's demand in full. There was no need for Mr. Whatley to appeal or answer Mrs. Whatley's appeal. This court could not grant him any more favorable relief than that previously granted him by the trial court. By his allegations of erroneous trial court rulings respecting some of the other items as expressed in the trial court's reasons for judgment, Mr. Whatley still does not seek more favorable relief than that granted by the trial court's judgment, but only seeks certain corrections which will reduce the amount he owes Mrs. Whatley as found by this court on original hearing, $15,451.85. No appeal, nor any answer to an appeal as contemplated by LSA-C.C.P. Art. 2133, was required in order for this court to consider Mr. Whatley's contentions in that respect.
There were a number of issues at trial other than the status of the oil and gas lease payment. In his reasons for judgment the trial judge resolved these issues as follows:
(1) The haycutter acquired by Mr. Whatley was purchased entirely with his separate funds and no reimbursement was owed to the community;
(2) Community funds were used to make payments on a tractor which was the separate property of Mr. Whatley and his separate estate owed reimbursement to the community in the amount of $2,134.16;
(3) Community funds were used for the benefit of Mrs. Whatley's separate estate and reimbursement was owed by her to the community in the amount of $1,854.40;
(4) Mr. Whatley's claim for damages to his house, which was the couple's residence during their marriage and is his separate property, as a result of a grease fire was denied. With the exception of a $100 deductible, the trial judge found that the damage claim had been satisfied by Mr. Whatley's insurer. Reimbursement from the community to Mr. Whatley's separate estate in the amount of $100 was ordered to cover the damage not compensated for under the insurance policy;
(5) Mr. Whatley's claim for reimbursement by the community for proceeds of the sale of cattle belonging to his separate estate and Mrs. Whatley's claim for the value of calves belonging to the community were held to offset each other, and no reimbursement was ordered;
(6) Reimbursement of the community by Mr. Whatley's separate estate in the amount of $2,114.15 was ordered to settle the joint checking account;
(7) 3,500 bales of hay valued at $1 per bale were accumulated during the existence of the community and Mr. Whatley's separate estate was ordered to reimburse the community in the amount of $3,500;
(8) Mrs. Whatley's separate estate was ordered to reimburse the community in the amount of $8,287.20 because community funds were used in satisfaction of her separate debts; and

*449 (9) Reimbursement by Mr. Whatley's separate estate to the community in the amount of $1,469 was ordered because carpet, drapes, and fans were purchased during the existence of the community with community funds and installed in Mr. Whatley's house which is his separate property.
In his original brief filed in this court and in his application for rehearing, Mr. Whatley complains of the trial court's rulings on the following items:
(1) The trial court's finding that Mr. Whatley's separate estate was not entitled to reimbursement for sales of cattle belonging to his separate estate;
(2) The trial court's ruling requiring Mrs. Whatley's separate estate to reimburse the community in the amount of $8,287.20 because community funds were used in satisfaction of her separate obligations, including a mortgage on her separate property. Mr. Whatley contends that the trial court should have ruled that Mrs. Whatley's separate estate owed his separate estate the sum of $3,287.20, representing that portion of Mrs. Whatley's separate indebtedness paid before establishment of the community and after the community was dissolved, and owed the community reimbursement in the amount of $5,000, representing that portion of her separate indebtedness paid during the existence of the community with community funds;
(3) The trial court's ruling requiring Mr. Whatley's separate estate to reimburse the community for carpet, drapes, and fans purchased with community funds and installed in Mr. Whatley's house which is his separate property. Mr. Whatley contends that the evidence introduced at trial is insufficient to substantiate these alleged improvements to his residence and reimbursement by his separate estate to the community should not have been ordered; and
(4) The trial court's ruling that Mr. Whatley's separate estate owed reimbursement to the community because funds in the couple's joint checking account had been used for the benefit of his separate estate. Mr. Whatley contends the trial court should have held that the community owed reimbursement to his separate estate in the amount of $1,620.80, representing the separate funds present in his checking account at the time of the marriage.
Concerning the sale of cattle, the evidence discloses that during the existence of the community Mr. Whatley sold on several occasions a total of 25 head of cattle for a total price of $6,932.32. It is apparent that most if not all of the cattle sold were owned by Mr. Whatley as his separate property prior to the marriage because calves born after the community was established could not have grown to the size of the cattle sold as shown by the sales slips. The proceeds of the sales of Mr. Whatley's separate cattle were used to pay community expenses and he is entitled to reimbursement from the community for the proceeds. Mrs. Whatley originally claimed reimbursement from Mr. Whatley for 10 calves, valued at $150 each, born during the existence of the community. The evidence at trial established that more than 10 calves were born and the maximum value which could be attributed to these calves which have been retained by Mr. Whatley is $3,000, a somewhat arbitrary but reasonable figure based on the testimony concerning the number of cows and the values disclosed by the prices received for the cattle that were sold. Mr. Whatley owes the community reimbursement for $3,000. The trial court's ruling that the two claims offset each other was erroneous.
Concerning the payment of $8,287.20 in satisfaction of Mrs. Whatley's separate debts which she owed prior to the marriage, the evidence discloses that $3,287.20 was paid by Mr. Whatley from his separate funds and $5,000 was paid from community funds. Mrs. Whatley owes Mr. Whatley the $3,287.20 paid by him from his separate funds and she owes the community reimbursement of the $5,000 paid from community funds. The trial court's ruling that Mrs. Whatley owed reimbursement to the *450 community for the entire amount of $8,287.20 was erroneous.
Concerning reimbursement by Mr. Whatley's separate estate to the community for carpet, drapes, and fans installed in his separate residence at community expense, the evidence presented amply supports the trial court's ruling and there was no error in this respect.
Concerning the joint checking account, the evidence discloses that at the commencement of the community there was $1,620.80 of Mr. Whatley's separate funds in the account and that at the termination of the community the account had a balance of $506.09, which Mr. Whatley apparently retained. Funds in this account were used to pay community expenses during the marriage. Accordingly, Mr. Whatley is entitled to reimbursement from the community for the difference, or $1,113.91. The trial court's ruling that he owed reimbursement to the community in settlement of the account was in error.
Taking the various items determined by the trial court about which there is no dispute and the items in dispute on appeal as resolved in this opinion and in our original opinion, the result is as follows:

Amounts owed to the community by the separate estate
of A. C. Whatley:
Mineral lease payment... $31,928.00
Value of calves......... 3,000.00
Value of hay............ 3,500.00
Fans, carpet & drapes... 1,469.00
Payments on tractor .... $ 2,134.16 $42,031.16
 __________
LESS amounts owed by community to A. C. Whatley's
separate estate:
Damage to house......... $ 100.00
Separate cattle sold.... 6,932.32
Joint bank account...... 1,114.71 $ 8,147.03
 _________ __________
Balance owed by Mr. Whatley
to the community ......................$ 33,884.13
Amount owed by Mr. Whatley to
Mrs. Whatley for her ½ community
interest ..............................$ 16,942.07
Amounts owed to the community by the separate estate
of Mrs. Whatley:
Various separate debts
paid..................... $ 1,854.40
Other separate debts
paid..................... 5,000.00
 __________
Balance owed by Mrs.
Whatley to the community.................$ 6,854.40
Amount owed by Mrs. Whatley
to Mr. Whatley for his ½
community interest.......................$ 3,427.20
 ___________
Net owed by Mr. Whatley to Mrs.
Whatley for community interest ..........$ 13,514.87
LESS amount owed by Mrs. Whatley
to Mr. Whatley ..........................$ 3,287.20
 ___________
Balance due by Mr. Whatley to
Mrs. Whatley ............................$ 10,227.67.

For the reasons assigned, our original decree is reinstated insofar as it affirmed the judgment of the district court signed December 9, 1982 granting a divorce and denying Mrs. Whatley's claim for alimony and insofar as it reversed and set aside the judgment of the district court signed January 20, 1983 denying Mrs. Whatley's claims against the community. The action for partition and accounting of the community is remanded to the district court for further proceedings in accordance with the views expressed in our original opinion, as modified by this opinion on rehearing. Costs of the appeal are assessed one-half to Mr. Whatley and one-half to Mrs. Whatley.