499 So.2d 222 (1986)
James Edward HOWARD, Plaintiff-Appellee,
v.
Helen Pauline Sherrill HOWARD, Defendant-Appellant.
No. 18143-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1986.
*223 Napper, Waltman, Madden, Rogers & Waltman by O.L. Waltman, Jr., Ruston, for defendant-appellant.
James L. Fortson, Shreveport, for plaintiff-appellee.
Stewart & Stewart by Jonathan M. Stewart, Arcadia, for intervenor.
Before FRED W. JONES Jr., NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Helen Pauline Sherrill Howard, appeals the trial court judgment partitioning the community property of the defendant and the plaintiff, James Edward Howard. We affirm in part, amend in part and reverse in part the trial court judgment.

FACTS
Plaintiff was reared in Arkansas and entered the Air Force in 1951. He met the defendant while stationed at Barksdale Air Force Base, in Bossier City, Louisiana. The couple were married on December 16, 1955. One child was born of the marriage. The parties lived at various points around the world before returning to Barksdale Air Force Base. They purchased a home in Bossier City, Louisiana in 1973, shortly before plaintiff retired from the Air Force. Defendant began working as a pharmacy technician at the Veterans Administration Hospital in 1971 and plaintiff began working for the city of Shreveport in 1980. The parties physically separated in November, 1975.
On September 9, 1983, plaintiff filed for divorce from the defendant based on living separate and apart in excess of one year without reconciliation. On October 5, 1983, a default judgment was entered granting the divorce. On September 19, 1984, plaintiff filed for partition of the community property existing between the parties consisting of the house and furnishings in Bossier City, a 1977 Pontiac automobile, a 1975 El Camino automobile, a lawn mower and yard tools, and three cemetery plots.
*224 Liabilities consisted of two mortgages on the home.
The defendant also claimed entitlement to a portion of plaintiff's military retirement pay, as well as his pension from the City of Shreveport. Plaintiff claimed entitlement to a portion of defendant's pension from the Veteran's Administration.
The major daughter of the marriage filed an intervention claiming her parents gave her certain household furnishings from the community including a piano, a rocker, a clock, a bedroom suite and a dinette and buffet.

TRIAL COURT JUDGMENT
The trial court found that the plaintiff was domiciled in Arkansas from the time he entered the Air Force until he changed his domicile to Louisiana in 1973 when he bought a house in Bossier City. The trial court concluded that Arkansas law governed the distribution of that portion of the military retirement benefits earned while plaintiff was domiciled in Arkansas and that Louisiana law governed the distribution of the portion earned while plaintiff was domiciled in Louisiana. The trial court ruled that under Arkansas law, military retirement is separate property and defendant was not entitled to any portion of the benefits which accrued while plaintiff was domiciled in Arkansas. The defendant was entitled only to that portion of plaintiff's military retirement benefits earned while plaintiff was a Louisiana domiciliary.
The trial court found each party entitled to reimbursement for mortgage payments which they made following the date of filing for divorce, September 9, 1983.
The trial court found that the pensions received by plaintiff from the city of Shreveport and by defendant from the Veteran's Administration would be divisible when the parties became entitled to them and that they would each be entitled to a portion of the pensions earned while the community existed.
The trial court found that the 1977 automobile and a bedroom suite were defendant's separate property.
As to the intervenor's claim, the trial court found no proof of entitlement to any of the community property. Testimony showed that the plaintiff and defendant indicated to the intervenor that the items she claimed would be hers "someday."
The trial court awarded defendant the items claimed by the daughter, including the dinette and buffet, the wall clock, the platform rocker, the piano, and the set of bedroom furniture purchased with community funds that was placed in their daughter's bedroom. Defendant was ordered to pay plaintiff $2,000.00. The cemetery plots, house, and remaining movables were ordered sold and the funds divided between the parties. The defendant appealed the trial court judgment urging numerous assignments of error. The plaintiff and the intervenor did not appeal or answer the appeal.

DOMICILE AND PARTITION OF MILITARY RETIREMENT
The defendant objects to the manner in which the trial court apportioned the plaintiff's military retirement benefits between the parties. The defendant contends the trial court erred in finding that the plaintiff remained an Arkansas domiciliary from the time he entered military service until the parties purchased a home in Louisiana in 1973.
Domicile is defined in LSA-C.C. Art. 38 as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment....
A member of the military is presumed to retain the domicile of his home state. LSA-C.C. Art. 46; Gowins v. Gowins, 466 So.2d 32 (La.1985); Walcup v. Honish, 210 La. 843, 28 So.2d 452 (1946); Spring v. Spring, 210 La. 576, 27 So.2d 358 (1946).
Domicile includes the element of residence, but it also includes the added *225 element of an intent to make the residence one's principal establishment. Gowins v. Gowins, supra. At the trial, testimony was presented in an effort to establish the intent regarding domicile. The defendant offered testimony that the parties intended to return to North Louisiana permanently following retirement from the Air Force. Members of defendant's family testified the parties explored the possibility of purchasing land in Louisiana as early as the 1950's. Evidence was also adduced that while the plaintiff was in the military the parties sometimes listed the address of defendant's parents in Gibsland, Louisiana as their mailing address.
However, plaintiff testified he voted in Arkansas elections and that up until the time of his retirement, his military papers listed his home of record as Arkansas. He further testified that although he and the defendant had discussed retirement plans from time to time, the final decision to become a domiciliary of Louisiana was not made until the purchase of the house.
The trial court was not clearly wrong in its conclusion that until the purchase of the house in Bossier Parish in the state of Louisiana in 1973, the plaintiff had not expressed a clear intent to change his domicile from Arkansas to Louisiana. For these reasons, the trial court judgment finding that plaintiff was an Arkansas domiciliary until 1973 will not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
The defendant next contends that even if the plaintiff was an Arkansas domiciliary until 1973, the law of Louisiana, and not the law of Arkansas, should be applied to apportion the military retirement benefits which accrued during the marriage while the plaintiff was domiciled in Arkansas. The defendant's contention is meritless as she confuses the issue of in personam jurisdiction to apportion military retirement benefits with the Louisiana conflict of law principles.
Under Federal law, a state court is authorized to treat military retirement benefits according to the law of that state. 10 U.S.C.A. § 1408(c)(1) provides:
(c)(1) Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.
Defendant argues the law of Louisiana regarding division of community property applies to military retirement benefits when one or more of the three conditions set forth in 10 U.S.C.A. § 1408(c)(4) are met. That section provides that a state court has jurisdiction to decide a partition of retirement benefits when the party to whom the benefits are payable is domiciled in the state, is a resident of the state other than by virtue of active duty in the state, or when the party consents to the jurisdiction of the court. Defendant incorrectly construes this statute as providing that Louisiana law necessarily applies to a partition of the retirement benefits because plaintiff consented to the jurisdiction of the Louisiana court when he filed his partition suit. However, this provision merely allows the Louisiana court to exercise in personam jurisdiction in this case because at the time of the suit, the plaintiff was domiciled in Louisiana, resided in Louisiana, and by filing suit in a Louisiana court, consented to its jurisdiction. This provision does not preclude the application of Louisiana conflict of law principles where appropriate.
We considered the conflict of laws issue in Schueler v. Schueler, 460 So.2d 1120 (La.App. 2d Cir.1984), writ denied 464 So.2d 318 (La.1985). In that case, the husband, a Louisiana resident, contended he was a domiciliary of Wyoming and that the law of that state governed the partition of military retirement benefits that accrued during the marriage of the parties. Even though the Louisiana court had personal jurisdiction over the husband, we agreed that Wyoming law was applicable to the *226 partition of the husband's military retirement benefits.
Under 10 U.S.C.A. § 1408(c)(1), retirement pay is the property of the member or the member and his spouse in accordance with the law of the jurisdiction of the court. Louisiana law specifies in LSA-C.C. Art. 10 that movables acquired by married persons are subject to the law of the domicile of the acquiring spouse. Under the facts of this case, because retirement benefits are movables, the trial court was correct in applying Arkansas law in apportioning that part of the military retirement benefits acquired while the plaintiff was an Arkansas domiciliary. Likewise the court was correct in applying Louisiana law to that portion of the benefits which accrued while the plaintiff was domiciled in Louisiana.
The trial court cited Paulsen v. Paulsen, 601 S.W.2d 873 (Ark.1980) and Sweeney v. Sweeney, 593 S.W.2d 21 (1980) for the proposition that under Arkansas law, the defendant would not be entitled to a portion of plaintiff's military retirement benefits. Sweeney held that under the law applicable prior to 1979, pension benefits which are vested but not currently due and payable are not personal property and therefore not divisible between the spouses following divorce. In Paulsen the court applied this same reasoning to the amended Arkansas law regarding division of property acquired during marriage. The court stated that marital property is defined under Act 705 of 1979 as "all property acquired by either spouse subsequent to marriage," and went on to reason that military retirement pay is not a fixed and tangible asset such as a vested pension or profit sharing plan that may be collected in a lump sum and is not therefore marital property as defined by the statute.
We note that Paulsen was subsequently overruled in Day v. Day, 663 S.W.2d 719 (Ark.1984). In Day the court was called upon to decide whether a husband's interest in a retirement plan sponsored by his employer was marital property subject to allocation under Ark.Stat.Ann. § 34-1214 (Supp.1983). That court found that under the revision of the Arkansas law such benefits would be divisible between spouses upon dissolution of the marriage.
Subsequent cases clearly establish that the court's decision in Paulsen was effectively overruled by Day. Gentry v. Gentry, 668 S.W.2d 947 (Ark.1984); Marshall v. Marshall, 688 S.W.2d 279 (Ark.1985); Young v. Young, 701 S.W.2d 369 (Ark. 1986); Askins v. Askins, 704 S.W.2d 632 (Ark.1986).
However, the status of property is determined as of the time of its acquisition. Succession of Adger, 457 So.2d 146 (La.App. 2d Cir.1984); Whatley v. Whatley, 439 So.2d 444 (La.App. 2d Cir. 1983). The portion of plaintiff's military retirement benefits which are attributable to military service while the plaintiff was an Arkansas domiciliary accrued prior to the revision of Arkansas law making such benefits divisible on termination of marriage. Counsel in this case have not cited any authority for retroactive application of the revision of the Arkansas law. A retroactive application would divest the plaintiff of benefits which were vested prior to the revision and which he received for approximately eight years before the revision. In fact, defendant practically concedes in her brief that if Arkansas law is to be applied, she is not entitled to any portion of plaintiff's benefits which accrued while plaintiff was an Arkansas domiciliary. We conclude that the trial court correctly utilized the applicable Arkansas law at the time the benefits accrued to find that the defendant was not entitled to a portion of plaintiff's retirement benefits attributable to the time during which plaintiff was an Arkansas domiciliary.
However, under Louisiana law the defendant was entitled to a portion of plaintiff's benefits which accrued while plaintiff was a Louisiana domiciliary.
The plaintiff entered the Air Force on May 29, 1951 and retired from the Air Force June 30, 1983. Plaintiff purchased property in Bossier Parish and became a *227 Louisiana domiciliary on April 24, 1973. Based on these facts, defendant was entitled to a portion of plaintiff's benefits for the two months prior to retirement in which plaintiff was a Louisiana domiciliary. The amount defendant should receive from plaintiff's benefits must be calculated according to the formula set forth in Sims v. Sims, 358 So.2d 919 (La.1978). The trial court was correct in using this formula. However, we note an error in the actual calculation made by the trial court. Plaintiff was in the military for a total of 265 months rather than 365 months as stated by the trial court in its reasons for judgment. Therefore, we compute defendant's entitlement to plaintiff's retirement benefits as follows:
2 months
--------
265 months × ½ × ANNUITY
Under this calculation, defendant is entitled to .4 percent of the military retirement benefits due the plaintiff.

APPLICABLE MATRIMONIAL REGIMES PROVISIONS
Following the actual separation of the parties on November 28, 1975, the defendant continued living in the family home. With the exception of approximately twenty months, the defendant, from her earnings, made the payments on the first mortgage on the house. She seeks reimbursement from the community for the mortgage payments made with her earnings, relying upon former LSA-C.C. Art. 2334.
Under former LSA-C.C. Art. 2334, all of a wife's earnings during the time she was actually separated from her husband constituted her separate property. Former LSA-C.C. Art. 2334 was repealed in the new enactment of Louisiana's matrimonial regimes articles in Acts 1979 No. 709 which became effective January 1, 1980. Defendant argues that because the parties actually separated in November 28, 1975, all the money defendant spent in making mortgage payments from November 28, 1975 until January 1, 1980 constituted her separate funds and therefore she is entitled to reimbursement from the community for those funds which she expended. Likewise, defendant argues that her pension benefits which accrued from November 28, 1975 until January 1, 1980 were her separate earnings and under the repealed Code article constituted her separate property, precluding any claim by the plaintiff to entitlement to a portion of those benefits which accrued during that time period.
The trial court did not find that former LSA-C.C. Art. 2334 applied to this fact situation and awarded the defendant reimbursement for mortgage payments made after September 9, 1983, the date the community regime terminated and awarded the plaintiff a portion of defendant's pension benefits from the time she began working for the Veterans Administration until termination of the community, without excluding the benefits which accrued under the former law. We find that in so doing, the trial court erred.
As stated above, the status of property as community or separate is determined as of the date the property is acquired. Succession of Adger, supra; Whatley v. Whatley, supra. Therefore, the mortgage payments made by the defendant from November 28, 1975 until the effective date of the revisions to the matrimonial regimes law on January 1, 1980, were made with the defendant's separate property and she is entitled to reimbursement for those payments from the community. The record indicates that the defendant expended $4,594 of her separate funds in payment of the first mortgage on the house. Likewise, defendant's pension benefits attributable to the time the parties were actually separated in November, 1975 until the effective date of the revision to the matrimonial regimes law on January 1, 1980 constituted her separate property not subject to division between these parties.
The plaintiff in briefs filed with this court argues that the revision to the matrimonial regime law should be applied retroactively because the revision was made to correct an unconstitutional denial of equal *228 protection under the former LSA-C.C. Art. 2334. Plaintiff claims the former article was unconstitutional because it contained a gender based classification making only the wife's earnings while actually living separate and apart from her husband her separate property. However, the statute has not been previously declared unconstitutional and before the constitutionality of a statute can be considered, the issue must first be raised in the trial court and the statute's unconstitutionality must be specially pleaded. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La. 1984). This issue of constitutionality of former LSA-C.C. Art. 2334 was not pleaded or presented to the trial court and cannot be considered here.

REIMBURSEMENT FOR PAYMENTS ON SECOND MORTGAGE
The defendant contends that at the time the second mortgage was made on the house the parties agreed that the plaintiff would be responsible for making the mortgage payments. She contends that the trial court erred in failing to recognize this agreement. Defendant argues that because of this agreement, the second mortgage was the separate obligation of the plaintiff, precluding his entitlement to be reimbursed for those payments from the community. In its reasons for judgment, the trial court found that both the first and second mortgages on the house were created during the existence of the community for the benefit of both parties. The trial court ruling was correct.
LSA-C.C. Art. 2360 defines a community obligation as:
An obligation incurred by a spouse during the existence of the community property regime for the common interest of the spouses or for the interest of the other spouse....
LSA-C.C. Art. 2361 provides:
Except as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations.
The second mortgage in this case was incurred prior to the termination of the community property regime existing between these parties. The record provides little guidance as to how the proceeds were used. In plaintiff's detailed descriptive list he claims the proceeds were used to satisfy community obligations. At the trial of this case, the plaintiff testified that he agreed to make the monthly payments, but there is no testimony concerning how the mortgage proceeds were utilized. Absent such a showing, the mere agreement by the plaintiff to make the monthly payments does not preclude a finding that this second mortgage constituted a community obligation entitling plaintiff to reimbursement from the community for the separate funds he expended following the date of dissolution of the community to satisfy this obligation.

AGREEMENT TO PARTITION MOVABLES
Finally, defendant argues the trial court erred in failing to recognize that the parties, by their actions, had partitioned certain movable property in the community. The trial court awarded the defendant the dinette set, wall clock, platform rocker, bedroom suit and piano. Plaintiff was awarded $2,000 from the community in order to equalize this award of movables.
The defendant presented no evidence at all to establish that there was an agreement between the parties to partition these items prior to the filing of this suit. The record does indicate that some of the items were transferred to the home of the Howard's daughter and that the plaintiff was aware of the transfer. However, no evidence has been presented to support defendant's contention that the parties had already agreed to a partition of these items. Therefore, the ruling of the trial court was correct and we affirm that ruling.

CONCLUSION
For the above stated reasons, we affirm the trial court judgment finding plaintiff to *229 be an Arkansas domiciliary throughout the duration of the marriage until 1973 when the parties purchased immovable property in Louisiana.
We also affirm the trial court's application of the Arkansas law in effect at the time plaintiff's military retirement benefits accrued to find that the portion of plaintiff's benefits were not divisible between the parties. We affirm that portion of the trial court judgment finding that under Louisiana law, plaintiff was entitled to a portion of plaintiff's military retirement benefits attributable to his service while a Louisiana domiciliary, but amend the trial court judgment to correct an error in calculation made by the trial court. That portion of the trial court judgment is amended to read as follows:
IT IS FURTHER ORDERED ADJUDGED AND DECREED that there be judgment herein awarding unto HELEN PAULINE SHERRILL HOWARD, and recognizing her as the owner of .4 percent of the military retirement benefits of JAMES EDWARD HOWARD.
We affirm the trial court judgment granting defendant reimbursement for payments which she made on the home mortgage following termination of the community on September 9, 1983. We reverse the trial court judgment denying defendant reimbursement for mortgage payments on the home she made from her separate funds between November 28, 1975 and January 1, 1980 and we allow her reimbursement from the community for those payments made during that period totaling $4,594.
We affirm the trial court judgment which awards the plaintiff reimbursement for payments which he made on the second mortgage on the home following termination of the community.
We affirm the trial court judgment finding no agreement between the parties that the second mortgage was to be the separate obligation of the plaintiff and finding no agreement between the parties prior to suit to partition the movables of the community.
AFFIRMED IN PART, AMENDED IN PART AND REVERSED IN PART.