572 So.2d 1045 (1990)
Karen Johnston LUFFEY, Plaintiff/Appellant,
v.
Isaac Louis LUFFEY, Jr., Defendant/Appellee.
No. 21926-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1990.
Rehearing Granted in Part and Denied in Part January 23, 1991.
*1046 Sedric E. Banks, Monroe, for plaintiff/appellant.
Walker & Walker by C. Douglas Walker, Monroe, for defendant/appellee.
Before FRED W. JONES, Jr. and NORRIS, JJ., and PRICE, J., Pro Tem.
FRED W. JONES, Jr., Judge.
Plaintiff, Karen Johnston Luffey, appealed the judgment of the trial court in favor of defendant, Isaac Louis Luffey, Jr., finding that defendant's corporation, Isaac L. Luffey, Jr., Inc., d/b/a Arkla Recycling, was his separate property, in plaintiff's rule to determine community property and for injunctive relief.[1] Finding that the trial court erred in classifying the corporation as separate property, we reverse.

Issues Presented
On appeal, plaintiff asserts the following assignments of error:
1) The trial court erred when it found the corporation was not acquired during the existence of the community regime through the efforts, skill or industry of either spouse;
2) The trial court erred when it failed to find the community was engaged in a scrap metal business before incorporation and beginning of business of the corporation;
3) The trial court erred in finding defendant met the heavy burden of proof which is required by law to rebut the legal presumption of community property; and,
4) The trial court erred when it did not take judicial notice of a fact as provided by in La.C.E. Art. 201.

Factual Context
In the on-going domestic litigation between these parties, this appeal concerns the determination of community property. The record demonstrates that the parties were married on October 13, 1979. The parties later separated and plaintiff filed for a divorce on March 13, 1989. In connection with the divorce proceedings, plaintiff filed a rule for a temporary restraining order and injunctive relief to prohibit defendant from alienating corporate property, which rule forms the basis of this appeal. Defendant subsequently filed a motion to dismiss the restraining order on May 9, 1989, necessitating a classification of the property. On July 11, 1989 a judgment of final divorce was granted by the trial court awarding plaintiff permanent alimony and child support.
At the trial on the rule to determine community property, defendant testified he had worked at Monroe Iron and Metal while in high school until August 1985 when he was terminated from his position. After his termination, he immediately began his own business, Isaac L. Luffey, Jr., Inc. d/b/a Arkla Recycling, which was engaged solely in the sale of scrap metals. Defendant testified the parties had purchased a tract of commercial property in West Monroe on November 7, 1984 for $107,500 primarily as an investment with some hope of eventually beginning a business at that location. The property had some trailer spaces and houses which were being rented but also had a substantial overgrowth and dilapidated buildings. Defendant stated he was having problems with his employers at the time the property was purchased and wanted to be prepared in anticipation of possible future termination. After his termination, he set up checking accounts and began preparations *1047 for opening his own business. Defendant incorporated on August 2, 1985 using a $10,000 Certificate of Deposit which was separate property as well as a $5000 donation from his father. Defendant's father gave him $7100 after the property was purchased in order for defendant to purchase a bulldozer necessary to clean up the property and for his business. Defendant stated his father had also purchased a pick-up truck for him.
On December 11, 1986 the community sold the tract of land to the corporation for $115,000. The $19,180.75 which was received in cash by the community was deposited in the community account and then later loaned back to the corporation. The corporation assumed the indebtedness remaining on the original loan. Defendant stated the corporation needed the money loaned from the community to operate. Defendant testified that from the time the property was purchased in 1984 until the date of incorporation in August 1985, he did not do any business on the property other than collecting rent, including rent paid to the community by the corporation, which was placed in the community account. Defendant testified he did not engage in his own scrap metal business or buy inventory until August 1985, following incorporation.
Defendant testified he was the sole employee of the corporation at its inception because he did not have the money to hire employees and he worked "day and night" in beginning the business. Defendant did hire one employee during the first three months in 1985 and the corporate sales increased from approximately $500,000 in 1986 to about $2,300,000 in 1988. Defendant now has nine employees.
Defendant testified he informed the corporate accountant, Gary Booth, that the corporation was to be his separate property. Although defendant testified the $10,000 CD and $5000 donation were used by him to purchase Stock Certificate 002 on August 20, 1985, the evidence established that many of the documents dealing with the corporation, such as the corporate tax returns, indicated the amount shown for common stock was $1000. Defendant stated he actually used the $5000 donation from his father for various purchases and expenses, such as attorney's fees incurred in the incorporation, in beginning his business. The CD was not actually transferred to the corporation until October 4, 1985 and defendant stated this was to allow the CD to mature without penalty. Defendant testified that when he began business in October 1985, the corporation borrowed money using the CD as collateral.
Contemporanously with the sale of the West Monroe property, both parties executed a $50,000 promissory note, which note was secured by a collateral mortgage on defendant's separate rent house. These funds were needed by the corporation for business operation expenses and the note was pledged to secure indebtedness of the corporation. Defendant testified plaintiff did not object to signing the note and understood the bank required her signature because of any possible interest she might have in the separate property of the rental home. Defendant testified the loan was primarily a re-financing of existing debt.
Plaintiff, Karen Johnston Luffey, testified that prior to defendant's termination of employment with Monroe Iron and Metal, they discussed the possibility of opening up their own business and this was why the West Monroe property was purchased. Plaintiff stated she was never told during the formation of the corporation that it was to be defendant's separate property and believed it was intended to be a family business. Defendant told plaintiff that the purpose of incorporation was for better tax advantages. Further, plaintiff stated when the parties sold the West Monroe tract to the corporation, she did not understand that she would no longer have an interest in that property. Plaintiff was not represented by her own attorney at this transaction. With reference to the $50,000 mortgage that was executed by the parties, plaintiff testified she did not understand she was incurring $50,000 in indebtedness and did not know who had received the proceeds. Plaintiff stated she did not know anything about defendant's business affairs and defendant had refused her requests *1048 to work at the corporation. She stated she did not know the corporation was defendant's separate property until sometime after they sold the land to the corporation.
Gary L. Booth, the corporate accountant, testified he had served as an accountant for the corporation from its inception. Booth had input into setting up the corporate books and had also prepared the corporate tax returns. He testified it was his understanding the corporation was to be the separate property of defendant at the time the Subchapter S election was required to be filed. Booth stated that corporate income tax returns reflected the amount in capital stock to be $1000. He testified that the $5000 initial deposit was exhausted in the payment of beginning expenses and he did not learn of the $10,000 CD until defendant informed him there had been an error and requested the CD be put on the corporate financial statement. Booth characterized the alleged error as to the amount shown for capital stock as simply miscommunication. He testified payments had been made from the corporation to the community on the loan to the corporation and as of December 31, 1986 the corporation owed defendant and the community an amount in excess of $40,000.
Several witnesses testified defendant had bid on various items and had purchased scrap metal prior to August 1985. Further, defendant had business cards printed in March 1985 and subscribed to an industry magazine in January 1985.
After reviewing the evidence and the testimony, the trial court dissolved the temporary restraining order issued against defendant with reference to the corporation and declined to grant the injunctive relief sought by plaintiff upon finding the corporation was separate property. Noting the community property law and various transactions executed by the parties, the trial court found that under these circumstances, the presumption of community property contained in La.C.C. Art. 2340 had been rebutted by the evidence and the separate nature of the corporation acquired by defendant during the existence of the community was established.

Classification of Property
The property of married persons is either community or separate. La.C.C. Art. 2335. The community property is comprised of:
1) Property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse;
2) Property acquired with community things or with community and separate things, unless classified as separate property under Art. 2341;
3) Property donated to the spouses jointly;
4) Natural and civil fruits of community property;
5) Damages awarded for loss or injury to a thing belonging to the community; and,
6) All other property not classified by law as separate property. La.C.C. Art. 2338.
La.C.C. Art. 2340 provides that although things in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, either spouse may prove that they are separate property. This article establishes a rebuttable presumption that everything of value in the possession of a spouse during the existence of a community regime is community property.
Separate property is defined by La.C.C. Art. 2341 as comprising:
1) Property acquired by a spouse prior to the establishment of a community property regime;
2) Property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used;
3) Property acquired by a spouse by inheritance or donation to him individually;
4) Damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as the result of fraud or bad faith in the *1049 management of community property by the other spouse;
5) Damages or other indemnity awarded to a spouse in connection with the management of his separate property; and,
6) Things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
The party alleging the separate character of the property must prove the property was acquired and paid for with separate funds by proof that is fixed, clear, positive and legally certain. The burden of overcoming the strong presumption in favor of the community clearly rests upon the party asserting the separate nature of the property. The status of property is determined as of the time of its acquisition. Tullier v. Tullier, 464 So.2d 278 (La.1985); Dance v. Dance, 552 So.2d 658 (La.App. 2d Cir.1989); Succession of Norwood v. Norwood, 519 So.2d 338 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1169 (La.1988); Lee v. Manning, 505 So.2d 902 (La.App. 2d Cir.1987); Howard v. Howard, 499 So.2d 222 (La.App. 2d Cir.1986), and Succession of Lindsey, 477 So.2d 148 (La.App. 1st Cir. 1985).
Plaintiff argues that the business known as Arkla Recycling was acquired through the joint and common labor, effort, skill and industry of both parties. Both parties sacrificed in meeting the $1600 monthly payments on the mortgage for the investment property and long before the community sold that property to defendant's "separate" corporation, defendant worked to improve the property. Furthermore, defendant was the only employee of the corporation for the first three months the business operated in 1985. Because the corporation operated initially as a loss, plaintiff continued contributing her part-time wages to the family's needs. Plaintiff further notes she signed the $50,000 note which was needed by defendant as operating money and the community never realized the $7500 profit which it allegedly made by selling the community property to the corporation. Plaintiff contends the fact that whether she knew she was selling community property to defendant's corporation in which she allegedly had no interest has nothing to do with the effort, skill and industry which she contributed to establishing that corporation as well as the effort, skill and industry committed to that business by her husband. Plaintiff notes that there is no doubt the business was acquired during the marriage and argues that if it was begun to any extent prior to incorporation, the incorporation can have no legal effect in that the property is either community or separate. Therefore, if the facts demonstrate defendant was engaged in the slightest extent in any sort of commercial enterprise while drawing unemployment benefits after his termination from Monroe Iron and Metal, defendant's subsequent and separate incorporation had no legal effect on that business. Plaintiff contends the party asserting the separate nature of property acquired during a marriage has the burden of overcoming a strong presumption in favor of community and asserts defendant failed to meet this heavy burden of proof.
The primary issue on appeal is simply whether the corporation should be classified as either a community asset or a separate asset of defendant. After reviewing the evidence and the testimony, we conclude the trial court erred in finding defendant met his burden of proof that the corporation was separate property. Based upon the record before us, we find that while the corporation was initially partially capitalized with separate property, under the particular circumstances of this case the corporation is a community asset.
In support of his claim that the business was separate property, defendant relies primarily upon the $15,000 capital contribution made by him to the corporation from separate funds given to him by his father. It is undisputed by the parties that these funds were separate funds and although the evidence is not clear as to whether these funds were actually used to purchase corporate stock, it is clear these funds were used in some fashion to capitalize the corporation at its inception. Although we *1050 agree that $15,000 in capitalization was important in the formation of this business, we find the contributions made by the community regime were ultimately of greater value.
This corporation was solely engaged in the scrap metal business, an operation defendant had been engaged in prior to his graduation from high school. Defendant's specialized knowledge of this field, when combined with his business contacts, effort, skill and industry were essential ingredients in the formation and ultimate success of this business. Obviously, these intangible factors combined with the labor of defendant were of substantial value to the business and under the provisions of La. C.C. Art. 2338, contributions which are of great importance in classifying this corporation as a community asset. Defendant began the corporation's business operations during the existence of the marriage and was the sole employee at its inception. It is clear from the testimony that defendant devoted all his efforts to the corporation, even though the business operated as a loss during the first few months requiring the family to live on defendant's unemployment compensation benefits and plaintiff's part-time wages. While defendant did use separate funds in beginning his business operations, it is clear from the record that the primary "capitalization" of the corporation was the defendant himself.
In addition to contributing defendant's knowledge, labor and industry to the corporation, the community regime also allowed the corporation to locate on its property, which was initially purchased by the community as the possible future site of a business. The community also "loaned" $19,180.75 to the corporation as it needed money to operate. Although it appears from the evidence this sum was substantially repaid, the extension of credit by the community had some substantial value since this fledgling corporation was not required to put up collateral for the "loan" and possibly could not have gotten such credit from conventional sources. Finally, when the corporation needed to refinance existing debt, plaintiff was required to co-sign a $50,000 promissory note which was a community obligation undertaken for the benefit of the corporation.
When the evidence is considered as a whole, it is clear this business was created and acquired through the effort, skill and industry of the spouses and thus falls within the definition of community property as set forth in La.C.C. Art. 2338. As plaintiff was further afforded the benefit of presumption of community property pursuant to La.C.C. Art. 2340, we find the trial court erred in concluding this corporation was a separate asset of defendant. The mere fact that some separate property was used to establish this corporation is insufficient to make the corporation a separate asset since defendant failed to prove the community contribution in establishing the business was of inconsequential value as required by La.C.C. Art. 2341.
The defendant and the trial court apparently placed great weight on plaintiff's alleged knowledge of defendant's intent and desire that the corporation be his separate property. Under our codal scheme, a party's intent or desire is of little consequence in classifying the property if that intent conflicts with the true nature of the property as defined by the Civil Code. Likewise, plaintiff's knowledge of defendant's efforts during the marriage to characterize this business as his separate property is of little consequence. Plaintiff was entitled to rely upon the law of this state in classifying this property and her knowledge of defendant's self-serving statements should not act to her detriment.
We further note that during the time defendant was undertaking during the marriage to create a legal foundation for his claim that the corporation was a separate asset, plaintiff was not represented by her own attorney but was instead only advised or counseled by an attorney who represented the husband and corporation. Under these circumstances, it would be incorrect to conclude that plaintiff's knowledge of defendant's intent and efforts prejudiced her rights under community property law.
*1051 In summary, this business was established during the community regime, prospered by reason of defendant's knowledge, labor and industry, operated on property owned by the community and used funds derived from loans from the community and from loans guaranteed by the community. Therefore, the corporation must be classified as a community asset and the trial court erred in concluding otherwise.
Upon finding that the corporation is a community asset, it is not necessary to consider plaintiff's argument that the trial court erred in failing to take judicial notice of the financial statement filed in the alimony pendente lite proceeding.

Decree
For these reasons, the judgment of the trial court denying plaintiff injunctive relief is REVERSED and there is judgment granting a preliminary injunction prohibiting defendant from alienating, encumbering, mortgaging, disposing of, concealing or wasting any community assets, including the corporation and this matter is REMANDED to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed to defendant.
NORRIS, J., concurs.
Before MARVIN, C.J., FRED W. JONES, Jr., SEXTON, and NORRIS, JJ., and PRICE, J. Pro. Tem.
PER CURIAM.
For the purpose of clarification, we note that our finding "the corporation is a community asset" was intended to mean that the stock certificate, representing the ownership of the corporation, belonged to the community existing between the Luffeys.
With this explanation, we deny the application for rehearing.
NORRIS, J., would grant a rehearing for reasons assigned.
MARVIN, C.J., would grant the rehearing for reasons assigned by NORRIS, J.
NORRIS, Judge, dissents from the denial of a rehearing.
The rehearing application convinces me that our decision reversing the trial court in this matter is in error. The trial court was not manifestly erroneous in its factual finding that Mr. Luffey did not engage in the scrap metal business after he was terminated from Monroe Iron & Metal and prior to his incorporation of Issac L. Luffey, Jr., Inc. Furthermore, the trial court was not clearly wrong in its conclusion that the stock of Issac L. Luffey, Jr., Inc., was purchased by Mr. Luffey with separate funds and is his separate property. If, in fact, the value of Mr. Luffey's stock has increased as a result of the uncompensated common labor or industry of the spouses, Mrs. Luffey is entitled to be reimbursed one-half of the increase attributed to the common labor. LSA-C.C. Art. 2368: Phillips v. Wagner, 470 So.2d 262 (La.App. 5th Cir.1985). I would grant a rehearing and affirm the judgment of the trial court.
NOTES
[1] Plaintiff perfected a devolutive appeal from the trial court judgment denying her injunctive relief but did not post an appeal bond. This court has jurisdiction over the matter as an appeal bond is no longer required for a devolutive appeal under La.C.C.P. Arts. 3612 and 2124. See Jones v. Cusimano, 511 So.2d 486 (La.App. 4th Cir.1987) and Chapman v. Fisher, 370 So.2d 162 (La.App. 3d Cir.1979).