611 So.2d 193 (1992)
In the Matter of Harriet Seidler, Wife of/and Lawrence Blake JONES
v.
Lawrence Blake JONES.
No. 91-CA-2611.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
Rehearing Denied January 13, 1993.
Writ Denied March 26, 1993.
*194 James G. Derbes, Derbes & Waldrup, New Orleans, for appellant.
Robert C. Lowe, Terence L. Hauver, Suzettee Marie Smith, Jeanne M. Gravois, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, for appellee.
Before BARRY, WARD and JONES, JJ.
JONES, Judge.
Appellant, Lawrence Blake Jones, appeals the trial court's judgment partitioning the community of acquets and gains which formerly existed between the parties. Appellee, Harriet Seidler, joins in the appeal.
This appeal is from a judgment rendered by the trial court pursuant to a hearing in which both parties raised exceptions to the Commissioner's findings of fact and recommended judgment. We adopt the Commissioner's statement of the case, reproduced herein:
The parties in the instant case are seeking a partition of their community property.

*195 In October, 1984, Harriet Seidler filed a petition for partition of Community Property and for an accounting. According to her, the parties were judicially separated on October 28, 1981; divorced on August 23, 1982; and the community terminated at the filing of the separation petition, which was October 20, 1981.
Harriet Seidler also seeks "a settlement of the accounts between the parties' separate estates."
The parties initially filed separate Descriptive Lists and subsequently filed a Joint Amended Descriptive List.
The central issues in this case are related to the property located at 1116-1118 Valmont Street in New Orleans. According to Mr. Jones, he purchased the property prior to marriage, and it thus constitutes separate property.
Ms. Seidler, on the other hand contends she and Mr. Jones entered into a contract prior to the marriage whereby she would provide design services in connection with the renovation work to be done on the house and be compensated at the rate of $50 hourly. (Ms. Seidler is a graduate Architect, but she has never been licensed to practice.)
Ms. Seidler also makes claims for supervisory services performed by her after the marriage. Additionally she contends the property in question became "community" (joint) by virtue of a donation from Mr. Jones.
The Commissioner issued findings and a recommended judgment, to-wit: that the parties did not have a contract for services, that Mr. Jones intended to transfer a half-interest in the 1116-1118 Valmont Street property to Ms. Seidler, and that the Amended Title was not defective to effect such a transfer, that Ms. Seidler was entitled to one-half of the rent actually collected on the Valmont Street property, and that in settlement of the community of acquets and gains Mr. Jones owed Ms. Seidler the sum of $67,544.31.
The trial court issued a judgment inconsistent with the Commissioner's recommendation only in so far as it adopted the appraised value on the Valmont Street property, higher values on an FNBC account and Mr. Jones' law practice, and classified E.F. Hutton account # N463344618 as Mr. Jones' separate property.
From this judgment both parties appeal.
By his first assignment of error, Mr. Jones argues that the trial court erred in failing to grant his Exception of No Cause of Action. Mr. Jones relies on La. C.C. article 2338 in arguing that a partition action is limited to property acquired "during the existence of the legal regime." Mr. Jones also cites La.C.C. article 2325 which defines "matrimonial regime" as "a system of principles ... governing ownership and management of the property of married persons as between themselves and third parties." Termination of the legal regime under La.C.C. article 2356 occurs at the time of death of a spouse or by judgment of divorce, separation from bed and board, or separation of property. (prior to 1990 amendment.) Mr. Jones further cites La. R.S. 9:2801 which governs actions for partition of community property `when the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising from the matrimonial regime.' Emphasis added.
We disagree with Mr. Jones that the question of whether Ms. Seidler was a co-owner arose after the community ceased to exist. Although not specifically pled, the substance of Ms. Seidler's arguments is that she invested her community labor, in addition to community funds, into the Valmont Street property. Ms. Seidler testified that she was concerned about being made a co-owner on the Valmont Street property because of the investment of her time and money in something that was not hers. We find that the record supports a finding that the Valmont Street property changed classification from separate property to community property as a result of a pattern of commingling and treating the property as a community asset throughout the marriage.
It is undisputed that Ms. Seidler rendered architectural services and other labor associated with the renovation of and addition *196 to the Valmont Street property. She claims to have devoted 6400 hours of service to the project. Mr. Jones testified that Ms. Seidler was a principal on the project but he maintains that her input was as his wife.
Ms. Seidler testified that prior to their marriage Mr. Jones asked her to prepare a design concept and presentation plans. She discussed a fee with him of $50.00 an hour. She claims that over a six month period she did four programs before Mr. Jones accepted the fifth and final program. She estimates to have spent a total of 400-500 hours on this aspect of the project and values her service at $20,000.00. She also testified that Mr. Jones promised to pay her for the work done prior to their marriage when he settled one of his personal injury cases. At no time did Mr. Jones request Ms. Seidler to do a billing or accounting on the house. Mr. Jones concedes that he treated the Valmont Street property as partially Ms. Seidler's because she planned to marry him and live in the house.
Ms. Seidler testified that at the time they were scheduled to be married in June of 1979 Mr. Jones had not made her a co-owner and she threatened not to marry him. She married him based on his assurance that he would make her a co-owner.
Subsequent to the marriage, Ms. Seidler testified that she spent 6,000 hours supervising construction on the house. Ms. Seidler testified that throughout their marriage they discussed her status as a co-owner on the Valmont Street property almost daily. Ms. Seidler continued to direct activity while the house was being worked on even after the marriage terminated. Clearly, the expectation of the parties was that the property would be jointly owned.
Mr. Jones admitted that he borrowed substantial amounts of cash in connection with the Valmont Street renovation, totalling some $130,000.00 by February 1982. Whitney Bank Account # XXXXXXXX, interchangeably referred to as LBJ Special Account and the 1116-18 Valmont Street Account, was a joint checking account established after the parties were married. The trial exhibits reveal that money flowed in and out of this account over the course of the marriage for the sole purpose of renovating and adding to the Valmont Street property. A review of deposits made to this account reflect that the dates and amounts correspond with promissory notes executed for the same purpose. However, not all deposits made to the LBJ Special Account/XXXX-XX Valmont Street Account were the result of loans that Mr. Jones secured. Also, Mr. Jones repaid portions of loans during the course of the marriage. Only in one instance did Mr. Jones testify that the source of a loan repayment was separate property. Apparently the remaining loan repayments were with community funds which resulted in commingling. The testimony by both parties evidence that the pattern of commingling was so extensive that the separate nature of the property is no longer distinguishable.
During the three years the parties were married Mr. Jones' reported income did not exceed $30,000.00 annually. Yet it was during this period that the bulk of the work on the property was completed. Ms. Seidler testified that for a period it was her income, earned as an employee with Qualicare, that supported the couple. She deposited her wages into a joint checking account out of which all of the household expenses were paid. She also claims that she was forced to use her savings to cover extraordinary expenses. Whether Ms. Seidler subsidized the living expenses of the household or co-borrowed money to complete construction on the Valmont Street property is a minor distinction. One can only conclude that community funds were spent on the property. Prior to the marriage Mr. Jones had a piece of property that he paid less than $26,000.00 for. After the renovation and addition, completed over the course of the marriage, the property appraised for $240,000.00.
No precise figures regarding the commingling of community funds during the course of the marriage were derived from trial, however the record is replete with testimony that community dollars were spent on materials, equipment and labor. Between the period of July-October 1981, *197 $58,000.00 was spent from the LBJ Special Account/1116-1118 Valmont Street Account. The language of La.C.C. article 2341 makes the classification of separate property a measure of whether the value of community things used in its acquisition inconsequential as compared to the value of separate things used. We can not say that in the instant case contributions made by the community were inconsequential.
A reading of La.C.C. article 2338, relevant to community property, states that the effort, skill or industry of either spouse is a factor in determining whether to classify property as a community asset. We find that the facts of this case are controlled by the law articulated in Luffey v. Luffey, 572 So.2d 1045 (La.App. 2d Cir. 1990) writ denied 577 So.2d 50 (La.1991). The court in Luffey held that an asset was capable of changing classification where the primary capitalization of the asset was the contribution of community labor. Mr. Jones' subsequent donation of one-half interest in the Valmont Street property to Ms. Seidler was superfluous in view of what appears to be a pattern of commingling and treating the property as a community asset throughout the marriage.
By his second assignment of error, Mr. Jones argues that the trial court erred in finding that he donated a one-half interest in the Valmont Street property to Ms. Seidler. Mr. Jones argues that the trial court erred in concluding that Ms. Seidler corporeally possessed the property because within the meaning of La.C.C. article 1541 the facts are insufficient to prove corporeal possession. Mr. Jones argues that the house was habitable yet Ms. Seidler did not move into it. Furthermore, Mr. Jones alleges that Ms. Seidler lacked the intent to possess nor did she perform any obvious acts of physical possession. The evidence is to the contrary.
The trial court correctly cites several examples indicative of Ms. Seidler's intent to possess as well as obvious acts of physical possession. She continued to supervise the renovations done on the property, ordered a stairwell for the property, wrote letters in connection with its late delivery and bought plumbing fixtures and hinges for the property. Also, she wrote an advertisement for rental of the property. Significantly, she accompanied Mr. Jones to the conveyance office when he filed the amended title and accepted a certified copy of the amended title after it was filed. Most importantly, Ms. Seidler possessed a key to the premises up until the time of trial. She testified that at the time Mr. Jones moved into the Valmont Street property with his new wife she considered using the key to investigate who was occupying the premises without her knowledge.
Nevertheless, we find that whether Mr. Jones donated a one-half interest in the property is moot in light of our finding that the property is properly classified as a community asset.
Both parties appeal the trial court's valuation of Mr. Jones law practice. It is evident, from comparing Mr. Jones' income tax returns with the partnership's Whitney Bank account statements, that Ms. Seidler did not benefit during the marriage from the enhanced value of Mr. Jones' law practice as a result of the undercompensated common labor of her spouse.
Nevertheless Ms. Seidler did not carry her burden of proving that she was entitled to a one half-interest in the law practice because, based on the testimony, the partnership pre-existed the community. Ms. Seidler is entitled to only one-half of the enhanced value of the partnership over the course of the marriage. Lowe, Louisiana Divorce, Section 4:44 at 4-65; Pellerin v. Pellerin, 550 So.2d 1250, 1253 (La.App. 4th Cir.1989); Guarisco v. Guarisco, 526 So.2d 1126, 1127 (La.App. 1st Cir.1988) writ denied 523 So.2d 1337 (La.1988).
It is not apparent that Ms. Seidler could not produce evidence of enhanced value. In fact Ms. Seidler appeals the trial court's valuation as too low and asserts that it should be $50,000.00. Although Mr. Jones failed to call his law partner as a witness in the case, Ms. Seidler could have called her in an effort at discovering enhanced value information. At the same time, the partnership records, which would be the best evidence, and information regarding cases *198 handled and resolved by the firm, were requested from Mr. Jones who was unable to comply with the discovery demands. The trial court stated in its reasons for judgment that it derived a value from the exhibits produced which "gives the court ample information to value Jones' interest in the law partnership." The trial court's award was an equitable resolution of this issue. We find no manifest error.
Ms. Seidler appeals, by her first assignment of error, the trial court's failure to award judicial interest from the date of judicial demand. The trial court cited Vice v. Vice, 567 So.2d 774, 776 (La.App. 3d Cir.1990) to support its award of legal interest from the date of signing of the Partition Judgment. Mr. Jones also cites Mara v. Mara, 513 So.2d 1220, 1225 (La.App. 4th Cir.1987) writ denied, 517 So.2d 813 (La. 1988) for the same proposition.
Furthermore, Mr. Jones argues that the court enjoys wide latitude in fashioning an appropriate award. Goins v. Goins, 580 So.2d 477 (La.App. 4th Cir.1991). We find that the trial court's award of legal interest was within its discretion.
By her second assignment of error, Ms. Seidler argues that the trial court erred in failing to award her relief for delays, travel and expenses. The trial court deferred to the Commissioner's ruling regarding payment of court costs, travel expenses and loss wages stating, "[t]he Commissioner was thoroughly involved with this case for several years and was in the best position to determine whether such reimbursement was appropriate." In addition, the trial court found that Ms. Seidler's claims were unsubstantiated. The record is devoid of any such evidence and we decline to remand for this limited purpose. See: Roques v. Alfonso, 399 So.2d 1294 (La.App. 4th Cir.1981) wherein the court found no abuse of discretion by the trial court when appellant failed to demonstrate an inequitable award of costs.
By her third assignment of error, Ms. Seidler argues that the trial court erred in ordering her to reimburse Mr. Jones for a check valuing $500.00. The December 11, 1981 check for $500.00 that Ms. Seidler was ordered to reimburse was identified by Ms. Seidler at trial. She acknowledged that she did not know whether it had been deposited into her separate account or a joint checking account. We find that this was a credibility determination and defer to the trial court on this issue.
By her fourth assignment of error, Ms. Seidler argues that she was entitled to take her one-half interest in the Valmont Street property unencumbered as quid pro quo for reimbursements owed her for the use of the property by Mr. Jones' second community. The trial court found that Ms. Seidler was not entitled to rental reimbursements from Mr. Jones' second community. Furthermore, the testimony throughout supports the trial court's finding that the property was encumbered. The record supports the trial court's findings.
By her fifth assignment of error, Ms. Seidler argues that Mr. Jones' second community should have been ordered to pay her rent as of the date they established domicile at the Valmont Street property. She argues that a co-owner's use of the property, which carries no obligation to pay rent, is distinguishable from use by a new community setting up domicile. Mr. Jones argues that the trial court had a rational basis for finding that his second community did not owe rent, namely that Ms. Seidler did not contribute to the expenses such as the mortgage, taxes or insurance of the property. The trial court's finding is supported by the record.
By her sixth assignment of error, Ms. Seidler disputes the trial court's value of E.F. Hutton account # N463260218. Specifically, Ms. Seidler argues that Mr. Jones made withdrawals from the account that reduced its value.
Mr. Jones responds that the trial court properly calculated the value of the account. *199 He argues that Ms. Seidler failed to show that the withdrawals were made for his separate use rather than for the benefit of the community as he alleges. We find that this was a credibility determination and defer to the trial court on this issue.
For the foregoing reasons, the trial court's judgment is affirmed.
AFFIRMED.