473 So.2d 867 (1985)
Lurlene F. TAYLOR
v.
Louis H. TAYLOR.
No. CA-2853.
Court of Appeal of Louisiana, Fourth Circuit.
July 9, 1985.
Rehearing Denied August 27, 1985.
*868 Brian J. Waid, Bubrig and Scandurro, Buras, for plaintiff-appellee, Lurlene F. Taylor.
Charles J. Ballay, Ballay & Braud, Belle Chasse, for defendant-appellant, Louis H. Taylor.
Walker H. Drake, Jr., Chalmette, for New Orleans and Baton Rouge S.S. Pilots Assn.
Joseph W. Nelkin, Julia E. Taylor, Nelkin & Pickle, New Orleans, for Crescent River Port Pilots Ass'n amicus curiae.
Chalin O. Perez, Edward J. Lilly, Perez & Perez, Braithwaite, for the Associated Branch Pilots (Bar Pilots) for the Port of New Orleans amicus curiae.
Before GARRISON, WARD and WILLIAMS, JJ.
WARD, Judge.
This is an appeal from a judgment of the District Court dividing the community property acquired during the marriage of Louis Taylor and Lurlene Fillingim. The primary issues are the valuation of the husband's share of stock in the New Orleans-Baton Rouge Steamship Pilots Association and the partition of other benefits of his membership. Additionally, the wife raises issues concerning the Trial Judge's order to partition the family home by licitation and the finding that one of the husband's retirement/pension plans is not community property.
Louis H. Taylor and Lurlene Fillingim were married in 1949 in Mississippi. In 1967 they moved to Louisiana, and in July of that year Louis Taylor joined the New Orleans-Baton Rouge Steamship Pilots Association. He is still an active member of the Association and derives a comfortable income from river pilotage.
A judgment of separation terminating the Taylors' community regime was rendered in May, 1983. Shortly thereafter, Captain Taylor filed a petition for partition of certain assets of the former community which the parties were unable to partition amicably. The Taylors were divorced on February 19, 1984, and trial on the partition followed.
*869 The Trial Judge decreed and awarded an undivided one-half interest in the following property to each former spouse:
1. One share of stock in the New Orleans-Baton Rouge Steamship Pilots Association.
2. The $10,000.00 initiation fee paid by Captain Taylor to the Association which is to be refunded at his retirement or death.
3. All future pro-rata disbursements of Captain Taylor's share of initiation fees paid by incoming members to the Association.
The original judgment also partitioned a retirement/pension plan which had been established by the Association after Mrs. Taylor filed for separation. This plan was deleted from the property partition by an amended judgment following a partial new trial because the Trial Judge found that Captain Taylor's interest in the plan was not community property. The original judgment also ordered partition by licitation of the family home in Belle Chasse.
First, as to the share of stock in the Association, Captain Taylor admits that it is community property but insists it is worth no more than the $100.00 he paid for it when he joined the Association. Captain Taylor contends that the Trial Judge erred in finding the value of one share of stock in the Pilots Association is $353,974.00.
The parties agree, and we have no doubt, that a member pilot's share of stock in the Pilots Association is a property interest like no other. While it may share characteristics with organizations and legal entities such as corporations, partnerships, labor unions and professional practices, the Pilots Association is unique. As Judge Rubin explained in McKeithen v. Frosta:
The pilots association is a voluntarily formed non-profit corporation. The formation of the association is permitted by LSA-R.S. 34:1047, which provides for self-regulation not in conflict with law or the rules and regulations of the Board of Commissioners. The association maintains a central office where it receives requests for pilotage. It maintains a roster of pilots available for duty and dispatches them to vessels on a rotating basis. It collects the pilots' fees, pays general overhead expenses from these receipts and remits the remaining receipts on a monthly basis to the individual member pilots according to an established formula based on the number of days each individual was available for piloting vessels. The association does not take out withholding tax or FICA on monies distributed to the pilot members because they are self-employed. The association files an annual federal income tax return on a corporate form (Form 1099), but does not pay taxes as an entity. It does not accrue profits of its own from the pilots' work.
This association is not the employer of the pilots, nor is it a partnership of pilots.
* * * * * *
Each member of the association had been licensed by the Coast Guard, served a six month apprenticeship, passed the Board of Commissioners' examination, and had been recommended by the Board and appointed by the Governor.
* * * * * *
To be a pilot for hire, it is virtually an economic necessity to belong to the association. At present, all commissioned pilots operating between the Huey Long Bridge and Baton Rouge are members of it. Although its services are virtually indispensable to the pilots as a group, the association does not have a legal monopoly on pilotage. A pilot's legal ability to perform service aboard a vessel does not depend on membership in the association, although as a practical matter it may be difficult for a pilot who is not a member to find work.
441 F.Supp. 1213, 1216-17 (E.D.La.1977) [citations omitted.]
Each incoming member of the Pilots Association purchases one share of the Association's stock for its par value of $100.00. The stock is non-transferable, and upon a member's death or resignation, his share of *870 stock reverts to the Association and the former member or his heirs is entitled to return of the $100.00 paid for the stock.
In arguing that Captain Taylor's interest in the Association is worth more than $100.00, Mrs. Taylor relies primarily upon the value of its goodwill. Commercial goodwill is the sum of all favorable attributes contributing to the earning power of a business and is an intangible asset separate from the business enterprise itself. Mrs. Taylor contends that the goodwill which Captain Taylor holds as a member of the Association is a distinct income-producing asset of the community, susceptible of valuation and partition.
Although his judgment did not specifically mention goodwill, the Trial Judge valued Captain Taylor's share of stock in the Pilots Association according to the calculations of Dr. A. Michael Agapos, an expert economist who testified for Mrs. Taylor. Using an "opportunity cost analysis", Dr. Agapos first subtracted the annual income of the average high school graduate in 1983 from Captain Taylor's 1983 income because that figure represents Captain Taylor's income advantage due to his Association membership. Dr. Agapos next multiplied that income differential by the ten years of Captain Taylor's future work life expectancy. The result of these calculations was then discounted to its present value. Using a seven percent discount rate, the computations yield a value of $353,974.00.
Captain Taylor contends, and his expert witness testified, that the share of Association stock is worth $100.00 because: 1) the Association is a service organization; 2) it is non-profit and non-trading; 3) it requires qualifications of its members; 4) it does not accumulate earnings; 5) the pilot is not an employee; and 6) the share must be surrendered for $100.00 upon retirement or death. Captain Taylor argues that by basing the value of his interest in the Association on future income, his former wife is claiming a share of his knowledge, skill, training, and laboring capacity which are personal attributes and not property subject to the community property laws.
We hold the Trial Court erred when it valued the share of stock based on the earning capacity of Captain Taylor as a river pilot. While business entities may have valuable goodwill based in large part on their income-producing potential, we decline to hold that Captain Taylor's individual interest in the Association has such value. Goodwill, an intangible asset, is normally considered susceptible of being sold, and, no matter how limited the demand for it, goodwill can be valued by a price established between a willing buyer and a willing seller. Captain Taylor's membership is essentially a union card. It is not an asset which he can sell or transfer for value. It does not represent a right to share in profits or receive a guaranteed income, nor does it produce income independent of Captain Taylor's labor. If he were to cease working as a pilot, whether by voluntary retirement or because of disability, disqualification or death, the alleged goodwill would disappear.
Although Mrs. Taylor argues that the privilege of membership in the Association is analogous to other incorporeals which are susceptible of valuation and considered community property, we decline the opportunity to speculate upon Louisiana's legal classification of other incorporeal assets and rights which themselves present novel questions of law. Analogies are useful and make interesting arguments, but ultimately, the value of Captain Taylor's stock must be based upon its peculiar characteristics. Hence, we reverse the Trial Court and limit the value of the share of stock to its $100.00 cost.
While Captain Taylor's membership in the Association has unquestionably enhanced his earning capacity, the valuation and partition of his membership is interrelated with other aspects of the dissolution of the marriage, particularly permanent alimony. While we do not believe capability for future earning is a community asset to be partitioned, it is a factor which presumably was considered by the *871 Trial Court in determining entitlement and amount of permanent alimony. If Mrs. Taylor now or in the future has insufficient means for her support, the law provides that Captain Taylor must contribute to her support out of his earnings by paying alimony in an amount determined partially by the size of his income. La.C.C.art. 160. Because of the efforts of Captain and Mrs. Taylor during their marriage, he now enjoys a substantial income. She received the benefits of that income during the marriage, and her lifestyle and needs undoubtedly reflect the earning capacity of Captain Taylor as a pilot. A permanent alimony award based upon his future earnings, her needs, and their previous lifestyle recognizes his future anticipated income as a pilot. If this future, and allegedly enhanced, income were analogized to goodwill and valued and partitioned as well as being considered in awarding alimony, Mrs. Taylor would twice become beneficiary of Captain Taylor's membership in the Pilot's Association. We do not believe such a result either fair or a proper application of the law.
Captain Taylor also contends the Trial Judge erred in holding Mrs. Taylor entitled to one-half of all future pro-rata disbursements of his share of initiation fees to be paid by incoming Association members.
The Association's Articles of Incorporation presently set the initiation fee at the greater of $10,000.00 or 12.5 percent of the previous year's average pilot's earnings. The Articles provide that the first $10,000.00 of the initiation fee of a new member who is elected to fill a vacancy created by the retirement, resignation, or death of a member is paid to the outgoing member or his estate. Any amount of the initiation fee in excess of $10,000.00 is distributed pro-rata to the 65 members of the Association.
The Pilots Association officer who testified regarding the practices of the Association said that the initiation fee is charged to "bind" new members to the Association, so that they do not go independent after Association members have invested in their training through the six-month apprenticeship program. He further testified that due to conditions in the industry, no new pilots had joined the Association since 1980, and he anticipated no new members in the near future.
Captain Taylor argues that the disbursements of initiation fees are earned income since the pilot members of the Association train the new members during their apprenticeships. On the other hand, Mrs. Taylor characterizes the disbursements as community property because the right to receive them was acquired during the marriage.
We agree with Captain Taylor that the future pro-rata disbursements of future initiation fees, infrequent and speculative as they are, represent payment to the member pilots for their training of new pilots. As such, they are not community property in this case.
Mrs. Taylor answered her former husband's appeal and asserted two additional errors in the Trial Court's judgment. She first contends that the Court should not have ordered the partition by licitation of the community property residence because partition in kind of the aggregate of the community assets could be easily accomplished and is the preferable remedy by law.
This is true. An asset may be offered at a public sale only in the event that it cannot be allocated to a party by any means, including by private sale or aided by the execution of notes and mortgages to equalize values of the aggregate shares of property. La.R.S. 9:2801.
The parties in this case stipulated to a descriptive list of assets which were partitioned by agreement. That stipulation was made a part of the partition judgment, and the remaining community property presumably was partitioned by the judgment here on appeal. The stipulation and the judgment leave the parties as co-owners in indivision of many assets of substantial value including life insurance policies and pension plans. Since Mrs. Taylor objects to the *872 judicial sale of the home, we see no reason why it cannot be allocated to her and other assets allocated to Captain Taylor. If necessary, the net allocations may be equalized by the payment of a sum of money, either on an installment basis or all at one time. See, Crews v. Crews, 432 So.2d 377 (La.App. 1st Cir.1983). Because the record before us does not contain evidence of the value of all the partitioned assets, and because we have revalued the share of Association stock, we must remand the case to enable the parties to again attempt a fair partition in the Trial Court.
Mrs. Taylor also assigns as error the Trial Court's amendment of the original judgment to hold that a pension plan adopted after the commencement of the separation proceedings in this case was not community property. Mrs. Taylor argues that, regardless of the date it was established, the pension plan is partially based upon Captain Taylor's years of service during the community and that she should receive one-half of the benefits attributable to service during those years. We agree.
Mrs. Taylor's petition for separation from bed and board was filed on May 26, 1982. The River Pilots Association adopted the pension plan in question, known as the "fourth retirement/pension plan," on September 8, 1982. This plan provides a monthly retirement pension or widows death benefit for pilots with more than twenty years service. The amount of the payment increases each year and is based on a multiple of a "days pay" as determined by a set formula.
The chronology of the petition for separation and the establishment of the plan presents a novel question, but the Louisiana Supreme Court has provided guidance in Sims v. Sims, 358 So.2d 919 (La.1978) and T.L. James & Co. v. Montgomery, 332 So.2d 834 (La.1976). In those cases involving pension plans existing at the time of the community partitions, the Court said that "[w]hen acquired during the existence of a marriage, the right-to-share [in a retirement plan] is a community asset which, at the dissolution of the community, must be so classified ..." Sims, 358 So.2d at 922, quoting T.L. James & Co. It is of no consequence that in this case the petition for separation was filed before the establishment of the pension plan and that the May 12, 1983 judgment of separation was retroactive to the date of the petition. La. C.C. 2375. The right to receive the benefits of the plan is a community asset to the extent it is compensation attributable to Captain Taylor's service during the marriage. We recognize that this right is an asset which is not presently susceptable of precise monetary valuation. Nonetheless, the parties may value the plan under the formula utilized for valuing Captain Taylor's other pension plans[1], or they may agree between themselves to assign a value for the purposes of effecting an immediate partition.
In summary, we find that Captain Taylor's share of stock in the New Orleans-Baton Rouge Steamship Pilots Association is community property to be partitioned, but we reverse the Trial Court's valuation and hold the share of stock worth $100.00. We reverse that portion of the judgment awarding Mrs. Taylor one-half all future pro-rata disbursements of initiation fees paid by new members of the Association because we believe those disbursements *873 are not community property. We reverse the Trial Court's order to partition Captain and Mrs. Taylor's home by licitation and remand the case solely for the purpose of allowing the parties and the Trial Court an opportunity to reallocate the assets of the community so as to avoid judicial sale of the home if possible. Lastly, we reverse the Trial Court's finding that the "fourth retirement/pension plan" is not community property. We hold that, to the extent attributable to Captain Taylor's years of service during the community's existence, future payments under this plan must be shared with Mrs. Taylor. The parties may decide whether they will partition the asset after payment of benefits commences or whether they will agree upon a monetary value and partition before benefits are paid.
REVERSED AND REMANDED.
NOTES
[1] The original judgment set out the following formula:
The portion of pension/
retirement attributable
to creditable service
during existence of
community × annuity or lump sum payment × ½
The pension/retirement
attributable to total
credit