526 So.2d 1126 (1988)
Honorine Russo GUARISCO
v.
Luke L. GUARISCO.
No. CA 86 1517.
Court of Appeal of Louisiana, First Circuit.
February 23, 1988.
Writ Denied May 6, 1988.
Peter J. Butler, Butler, Heebe & Hirsch, New Orleans, and Newman Trowbridge, Jr., Bauer, Darnall & Boudreaux, Franklin, and A.M. Yiannopoulos, New Orleans, for plaintiff.
Phillip A. Wittmann and Randall A. Smith, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, and John E. Coleman, Jr., Aycock, Horne & Coleman, Franklin, for defendant.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
This case involves a partition of the community property which existed between plaintiff, Honorine Russo Guarisco, and defendant, Luke L. Guarisco.
Mr. and Mrs. Guarisco were married on March 9, 1968. On June 23, 1982, Mrs. Guarisco filed suit against her husband seeking a separation from bed and board. On September 22, 1983, Mr. Guarisco brought suit seeking a divorce based on living separate and apart for one year. The two suits were consolidated, and the parties were divorced on December 9, 1983, thereby terminating the community of acquets and gains previously existing between Mr. and Mrs. Guarisco as of September 22, 1983.
After their divorce, Mrs. Guarisco instituted this proceeding to partition the former community. Three disputes were presented to the trial court for its decision:
(1) her claim for reimbursement for community property used to improve the family residence, which is his separate property;
(2) his claim for reimbursement for separate property expended on behalf of the community; and
(3) her claim for reimbursement for one-half of the enhanced value of 200 shares of corporate stock in Oil & Gas Rental Services, Inc., which is his separate property.
After trial on November 1 and 11, 1985, the trial court entered written reasons on the issues presented to it. Thereafter, a final judgment was signed by the trial court encompassing its reasons for judgment. The court made the following findings with respect to the spouses's claims:
(1) the community is entitled to reimbursement of $400,423.09 for improvements made to his separate residence;

*1127 (2) he is entitled to reimbursement of $611,553.00 for the expenditure of his separate funds on behalf of the community; and
(3) she is not entitled to reimbursement for the enhanced value of defendant's separate stock in Oil & Gas Rental Services, Inc.
Mrs. Guarisco was granted this appeal from the trial court's judgment and raises the following issues:
(1) whether the law applicable to her enhancement claim is La.Civ.Code Art. 2368, as enacted by Act 709 of 1979, effective January 1, 1980, or its repealed predecessor, Art. 2408 of the La.Civ.Code of 1870;
(2) whether she bears the burden of proving that the increase in value of the separate property was not due solely to natural causes; and
(3) whether the trial court erred in granting his claim for reimbursement for the payment of community debts with his separate property.
The trial court was correct in applying La.Civ.Code Art. 2368, since the right to claim reimbursement for enhancement of the value of separate property becomes available upon dissolution of the community and not before. Here, the spouses are bound by the law in effect at the termination of the community rather than by the law at the time of their marriage. That this was the intent of the Legislature in enacting Act 709 of 1979 is evidenced by Section 10 of the same. It provides that spouses living under the prior legal community property regime could adopt a matrimonial regime of their choice by matrimonial agreement executed before January 1, 1980. There is no evidence of record to indicate that the Guariscos executed such an agreement. Thus, on the effective date of Act 709, January 1, 1980, the rights and obligations of the spouses in this case were henceforth governed by the provisions of the Act.
The trial court was also correct in holding appellant bears the burden of proof under Article 2368. Moreover, the record supports the trial court's finding that plaintiff failed in her burden of proof and therefore was not entitled to a credit for the enhanced value of defendant's corporate stock.
With respect to Mr. Guarisco's reimbursement claim, this Court will not disturb the factual findings of the trial court because "[T]here is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding..." Canter v. Koehring Company, 283 So.2d 716 (La.1973).
After a thorough review and evaluation of the record, we are convinced the evidence supports the reasons assigned by the trial court, and we affirm, adopting its reasons as our own, and attach a copy hereto. All costs are to be paid by Honorine Russo Guarisco.
AFFIRMED.

APPENDIX

16th Judicial District Court

Parish of St. Mary

State of Louisiana

Honorine Russo Guarisco

v.

Luke L. Guarisco

Number 72,596-F

REASONS FOR JUDGMENT
Honorine Russo Guarisco (Honorine) filed this suit to partition the community *1128 estate formerly existing between herself and Luke L. Guarisco (Luke), and for settlement of reimbursement claims between the parties.
The parties were married on March 9, 1968. On June 23, 1982 Honorine filed suit seeking a judicial separation (Docket No. 67,104). On September 22, 1983 Luke filed suit in this Court seeking an absolute divorce based on living separate and apart one year (Docket No. 70,911). These actions were consolidated, and on December 9, 1983 a Judgment of Divorce was granted in Luke's favor. It was stipulated that Honorine was free from fault in the original cause of the separation. The community of acquets and gains formerly existing between the parties was therefore terminated on September 22, 1983, as provided by Louisiana Civil Code Article 159.
The parties have submitted sworn detailed descriptive lists, have filed traversals, and evidence and testimony has been presented to the Court. The parties are in agreement with respect to the liabilities and assets of the former community in all but three areas, specifically:
1. a reimbursement claim of $400,423.09 for improvements made to Luke's separate residence allegedly with community funds;
2. a reimbursement claim of $211,129.91 for Luke's separate funds allegedly expended on behalf of the community; and
3. an enhancement claim by Honorine for one-half the increase in value of Luke's separately owned stock in Oil & Gas Services, Inc.

THE REIMBURSEMENT CLAIMS
The parties established their matrimonial residence in a house owned separately by Luke. Between January 1, 1968 and October 1977, improvements were made to the home which cost a total of $400,423.09. During this same period, various loans totalling $462,185.04 were made to the community.
Honorine contends that the funds expended for the improvements to Luke's separate property were community funds, and she is therefore entitled to be reimbursed one-half the value of the funds. Luke contends that he does not owe a reimbursement to the community because the improvements were ultimately paid for with his separate funds.
On February 19, 1980 Luke sold 15,000 shares of his undisputed, separate stock for $611,553.56. The following day $443,847.84 was paid to three banks to retire three loans. On March 20, 1980 a Mercedes automobile was purchased with funds from this account, and on April 15, 1980 $127,589.00 was paid from this account to the Internal Revenue Service for taxes. The Mercedes has been treated by both parties as community property, and Federal Taxes incurred during the community are presumed to be community obligations. Total funds expended on these items amounted to $616,032.80.
The law is clear that a spouse owes reimbursement to the community when community funds have been expended to improve that spouse's separate property. Louisiana Civil Code Article 2366. Succession of Sonnier, 208 So.2d 562 ([La.App.] 3rd Cir. 1968); Richard v. Richard, 383 So.2d 806 ([La.App.] 1st Cir.1980). There is also a presumption that obligations incurred during the marriage are community obligations. Louisiana Civil Code Article 2361. Therefore, the loans made to the community are presumed to be community obligations, and the proceeds are community funds. The Court is satisfied that the improvements made to Luke's separate property were paid for with community funds, in large part with the proceeds of the loans made to the community from April 1976 through July 1977. He must, therefore, reimburse the community for the improvements.
The evidence and testimony presented at trial showed that the proceeds from the sale of Luke's stock were used to retire community debts, purchase a car for the community, and pay community taxes. Luke is entitled to be reimbursed for satisfying these community obligations, and enhancing the community, with separate *1129 property. Louisiana Civil Code Articles 2365, 2367; Gachez v. Gachez, 451 So.2d 608 ([La.App.] 5th Cir.1984), writ denied 456 So.2d 166; Gilley v. Ketchens, 478 So.2d 638 ([La.App.] 2nd Cir.1985). Although Articles 2365 and 2367 did not become law until January 1, 1980, the Gachez Court applied them in that case. In Gachez, supra, a reimbursement claim resulted from the termination of a marriage contracted in 1975 and terminated in 1981. The reimbursement was due for a down payment on the family home made January 4, 1980.

THE ENHANCEMENT CLAIM
In November of 1967, four months prior to his marriage to Honorine, Luke acquired stock in the newly incorporated Oil & Gas Rental Services, Inc. (the Company). At that time the Company had a capital base of $100,000.00. The value of the Company increased to several million dollars by 1983. Luke was closely connected with the Company throughout the parties' marriage, as president and later as Chairman of the Board and took an active part in its day to day operations. On September 22, 1983, the date the community terminated, Luke owned 23.5 percent of the Company's stock.
Honorine contends that Luke's labor and industry during their marriage (equivalent to common labor or industry, Abraham v. Abraham, [230 La. 78], 87 So.2d 735 (La. 1956)) resulted in the dramatic increase in value of the Company. She argues that Louisiana Civil Code Article 2408 (repealed), which was the governing law during most of the marriage, should be applied, entitling her to one-half the increased value of Luke's separate stock. Article 2408 reads:
"When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse, or his or her heirs, shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses or industry; but there shall be no reward due, if it be proved that the increase is due only to the ordinary course of things, to the rise in the value of property, or to the chances of trade."
Luke contends that Louisiana Civil Code Article 2368 which replaced Article 2408 effective January 1, 1980, should be applied to the facts presented in this matter. Article 2368 provides:
"If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor."
Luke argues that because he was compensated for his work with the Company, Honorine is not entitled to be awarded any portion of his stock's enhanced value.
The initial determination to be made is whether former Article 2408 or current Article 2368 applies to Honorine's enhancement claim. It is well established that as a general rule, a law can prescribe only for the future, Louisiana Civil Code Article 8; Tullier v. Tullier, 464 So.2d 278 (La.1985), and cannot be applied retroactively so as to impair obligations or divest or impair vested rights. Tullier, supra. However, laws which are procedural or remedial in nature are generally not viewed as impairing vested rights, and are applied retroactively in the absence of specific language to the contrary. Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978); Tullier, supra.
Honorine argues that her right to "reward" under former Article 2408 vested prior to January 1, 1980 because the marriage was contracted and the majority of the community's duration existed while Article 2408 was law. The Court must disagree.
Under Article 2408 a claimant for reimbursement was required to show:
"First. What was the condition of the property at the time of the marriage? Second. What would be the value of such property at the dissolution of the *1130 community, in the state in which it was at the time of the marriage? Third. What was the real value of the said property, with all the improvements existing thereon, in the condition in which it was at the time of the dissolution of the community? Fourth. What is the difference between the two estimates? Deliberto v. Deliverto, [Deliberto ], 400 So. 2d 1096, 1099 (La.App. 1st Cir.1981), citing Babin v. Nolan, 6 Rob. 508, 514 (1844).
(Emphasis added.) McKey v. McKey, 449 So.2d 564 ([La.App.] 1st Cir.1984). Clearly, the right to reimbursement is contingent upon the existence of enhanced separate property at the dissolution of the marriage, and the claimant spouse can have no interest in a mere expectation. That an interest does not vest until the dissolution of the marriage is now reflected in Louisiana Civil Code Article 2358 which provides:
"Upon termination of a community property regime, a spouse may have against the other spouse a claim for reimbursement in accordance with the following provisions [including Art. 2368]."
In discussing the new Matrimonial Regimes Law, two members of the Advisory Committee to the Joint Legislative Subcommittee Revising Louisiana's Community Property Laws, wrote that the right to reimbursement is "specifically available only upon termination of the regime." Spaht and Samuel, Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law, 40 La.L.Rev. 83, 143 n. 367 (1979). In light of the foregoing, the Court must apply Louisiana Civil Code Article 2368 to this case, where the community terminated after the effective date of this article.
Article 2368 provides for reimbursement of one-half of any increased value of separate property where the increase is "a result of the uncompensated common labor or industry of the spouses ...". At first blush, it would appear that under the facts of this case Honorine would not be entitled to reimbursement because Luke was compensated (by some standards one might say quite handsomely) for his labor and industry on behalf of the Company. However, the Comment to Article 2368 states, in part:
"Under this provision, when separate property has increased in value due to the uncompensated labor and industry of either spouse, the other spouse is entitled to one-half of the increase. To the extent that a spouse is compensated for his labor, no reimbursement is due. (Emphasis added.)
This comment indicates that no reimbursement is due only to the extent that a spouse is compensated. Labor exceeding the spouse's compensation which results in increased value of separate property, would still entitle the claimant spouse to reimbursement for enhancement resulting from the uncompensated labor.
As applied to the matter at hand, Honorine is entitled to reimbursement if she can satisfy the test outlined in McKey, supra, as to any labor or industry beyond which Luke was compensated, and must show that the enhancement was not due to natural enhancement. McKey, supra.
The Court notes that the test set out in McKey is clearly couched in language dealing with improvements made directly to or on real property, not enhancement of the value of incorporeals such as stock. Nevertheless, these rules are easily applied by analogy. Honorine is therefore first required to show the value of Luke's stock at the time of the parties' marriage. She must then show what the value of that stock would have been at the dissolution of the marriage had Luke not contributed uncompensated community labor or industry to the Company. Third, she must show the real value of Luke's stock at the dissolution of the marriage. The difference in the latter two determinations establishes the enhanced value of the separate property. Finally, Honorine must establish that the enhancement claimed was not due to the natural course of events. The burden to show all of the above is on the claimant spouse. McKey, supra.
After extended and exhaustive examination of the testimony and evidence presented in this case, the Court finds that Honorine has failed to carry that burden of *1131 proof. While the initial value of Luke's stock was clearly established at $35,000 and several measures of the value of Luke's interest in the Company were presented, Honorine failed to establish what the value of Luke's interest would have been had the community not provided uncompensated labor or industry. Honorine also failed to show that the enhanced value was not due to natural enhancement. In fact, the Court is conversely persuaded that the great increase in the stock's value was due primarily to the vagaries of the oil industry during the period in question. The Court was especially impressed by the graphic representations of the economic evidence presented during trial which were supplied to the Court by defendant's attorneys. (Attached as Appendix I.) These graphs clearly illustrate the correlation between economic conditions, the revenue of the Company, and Luke's compensation.
Further, the Court is persuaded that the community was fully compensated for Luke's labor and industry, by virtue of his annual salary and bonus of $381,500. Evidence was submitted that Internal Revenue Service seriously questioned the compensation Luke received but he was able to justify those amounts.
The Court therefore finds that Honorine is not entitled to reimbursement for the increased value of Luke's separate stock in Oil & Gas Rentals, Inc.

PARTITION OF THE COMMUNITY
The parties to this litigation submitted sworn detailed descriptive lists of community assets and liabilities which differed only as to the claims outlined above. Having decided those issues, we must now partition the community property as directed by La.R.S. 9:2801.
La.R.S. 9:2801(1) requires the parties to list all liabilities and assets of the community. A review of the descriptive lists submitted, considering the Court's findings in the disputed areas, reveals that the community possessed assets as of trial of $803,164.89 and liabilities in the amount of $1,221,477.63. (See Appendix II attached) Conspicuously absent from the lists of assets presented to the Court are the normally expected items of community property, such as household furnishings, appliances, utensils, sporting equipment, and other miscellaneous movables. Nevertheless, the Court must accept the descriptive lists as presented.
The Court awards all listed assets to Luke, with the exception of $25,000 cash which is allocated to Honorine. Luke is to assume and pay all outstanding community obligations, except $234,156.37 of the $611,553 owed him by the community. Honorine is to satisfy this portion of the liabilities by giving Luke her promissory note in the principal sum of $234,156.37, payable in 180 monthly installments of $1,300.87 each, without interest.
This rather unusual partition requires some explanation. For all but about three years of the fifteen years of the parties' marriage, Luke was the head and master of the community. The settled law of this State for more than 180 years was that the husband had the unfettered control and management of the community assets and likewise could incur community obligations without any restraint or restriction whatever. His improvidence in the use of this raw power subjected him to a penalty, only at the termination of the community, if the community was insolvent at that time. The nonmanagerial spouse walked away from those debts free and clear and the head and master was saddled with them. The constitutionality of the head and master concept was seriously attacked in 1979 and was legislatively repealed effective in 1980. See La.Civil Code Article 2404 (repealed) and Winter v. Gani, 199 So. 600 ([La.App.] 1st Cir.1941) and Smith v. Viser, 117 So.2d 673 ([La.App.] 2nd Cir.1960) and citations therein.
One element has characterized much of this litigation from Honorine's point of view. The timing of the changes in the law have wreaked pure havoc with her estate. Admittedly, especially beginning with the enactment of the new laws in 1980, she might have demanded more of a voice in the management of the community and if need be, had other weapons at her control *1132 up to and including the termination of the community. The requirement in the foregoing reasons that Luke assume the community obligations and that he be reimbursed therefor by Honorine with a long term non-interest bearing promissory note, is an effort by the Court to soften to the greatest extent possible, what is considered to be an unfair, if not down right inequitable, but nevertheless, a proper legal result under the present community partition law.
The parties are to submit to the Court by mail any mathematical errors noted in the calculations involved in this partition within ten days of the date below.
Judgment in keeping with these reasons will be signed upon presentation after ten days. All costs are to be paid by Luke.
THUS DONE AND SIGNED in Chambers at Franklin, Parish of St. Mary, Louisiana, this 30th day of July, 1986.
 /s/ M.J. McNulty
 APPENDIX I
 TABLE OF CONTENTS
 -----------------
 Title
 -----
Exhibit A-1 Luke L. Guarisco Annual Compensation
 (bonuses included)
 From Oil & Gas Rental Service,
 Inc. 1968 thru 1985
Exhibit A-2 Officers' Compensation Oil and
 Gas Rental Service, Inc. For
 the eighteen years ended October
 31, 1985
Exhibit A-3 Part I: Annual Income History
(two parts) Oil & Gas Rental Service, Inc.
 All Operations Inception thru
 10/31/85
 Part II: Annual Income History
 Oil & Gas Rental Service,
 Inc. Rental Tool Division Inception
 thru 10/31/85
Exhibit A-4 Average Number of Rigs Running
 in the United States from
 1967 thru 1985
 Oil & Gas Journal, May 19,
 1986, pp. 19-26.
Exhibit A-5 Consumer Price Index for All
 Items and for Fuel Oil & Coal
Exhibit B Standard & Poor's Index of Oil
 Service-Equipment Companies
 From 1967 thru 1985
 Excerpt from Standard &
 Poor's Stock Price Indexes, regarding
 "Description of Method
 Used in "Computation"
Exhibit C Comparison of Oil and Gas Marine
 Division Earnings against
 10% Return on Investment in
 Cargo Vessels
Exhibit D Luke L. Guarisco Annual Compensation
 (in 1982 dollars)
 Compared to Executive Compensation
 for Comparable Size
 Business
*1133 
*1134 
*1135 
*1136 
*1137 
*1138 
*1139 
*1140 
*1141 
*1142 
*1143 
*1144 
*1145 
*1146 
*1147 
*1148 
*1149 
*1150 
*1151 
*1152 
*1153 
*1154 
*1155 
*1156 
*1157 
*1158 
*1159 
*1160 
*1161 
*1162 
*1163