550 So.2d 1250 (1989)
James W. PELLERIN
v.
Cynthia Cerise, wife of James W. PELLERIN.
No. 88-CA-0594.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1989.
*1251 Stanley McDermott, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, and Russell J. Schonekas, Berrigan, Danielson, Litchfield, Olsen and Schonekas, New Orleans, for appellee.
Edward J. Gay, III, Leon J. Reymond, Jr., Robert S. Angelico, Liskow & Lewis, New Orleans, and Sydney J. Parlongue, Parlongue & Riegel, New Orleans, for defendant-appellant.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
BYRNES, Judge.
Mrs. Cynthia Cerise Pellerin appeals a judgment finding her ex-husband James Pellerin's controlling interests in Pellerin Laundry Machinery Sales Company (PLMSCO) to be his separate property in which their community had no claim for enhancement in value or for dividends. We affirm.

FACTS
On March 19, 1986, James Pellerin filed a petition seeking a divorce from Mrs. Pellerin, which was granted by final judgment of August 7, 1987. The legal regime of community property terminated as of March 19, 1986. As part of the divorce proceedings, Mr. Pellerin filed a petition for partition of community property and a trial on the partition was held on February 19 and 20 and April 21, 1987. In her sworn descriptive list of assets and liabilities, Mrs. Pellerin included:
Acquisition and retention of controlling interests in Pellerin Laundry Machinery Sales Co., Inc. by James W. Pellerin during the existence of the community of acquets and gains.
On June 22, 1987, judgment was rendered in the partition proceedings, deleting from Mrs. Pellerin's descriptive list the above item which she claimed to be community property. Mrs. Pellerin appeals that judgment.

ISSUES
The issues presented on appeal are:
(1) whether the wife is entitled to credit to the community for the increase in the husband's controlling interest in a family corporation which occurred during the marriage; and
(2) whether the corporation unreasonably withheld dividends on the company's stock, which would have fallen into the community property during the marriage.
The record indicates that prior to his marriage of July 19, 1975, James Pellerin, his brother and his two sisters each acquired as donations from their father and grandfather, 25% of the common stock of PLMSCO, a business engaged in the purchase and sale of commercial laundry equipment. After James married, when the general manager of PLMSCO, Doug Brown, resigned, Norvin Pellerin asked his *1252 son James to manage the company instead of attending graduate business school at the Wharton School of the University of Pennsylvania. An arrangement was made wherein the PLMSCO sales manager, Jake Mathey, received stock representing 8% ownership interest, which reduced each child's interest to 23%. Thereafter, James Pellerin became president of PLMSCO in May, 1976. In 1977, the Board of Directors adopted a Plan of Recapitalization in which James' siblings exchanged their common stock for preferred stock, and James acquired controlling interest in the voting common stock of the corporation. His voting interest increased from 23% to 92%.
Mrs. Pellerin argues that James Pellerin acquired new property rights as a result of the recapitalization plan. The wife refers to the portion of the plan which provides:
James W. Pellerin has been named, by the unanimous approval of the Board of Directors, to be the president and general manager of the Corporation and is active in the management of its daily operations. Although acting as the key executive of the Corporation, he presently does not own a controlling interest in the voting common stock of the Corporation. Jack W. Mathey (sic) is the vice-president of the Corporation and is active in its daily operations. The remaining stockholders have each indicated their present lack of professional knowledge and interest in directing and managing the affairs of the Corporation.
James W. Pellerin, as the key executive, spends considerable time managing and directing the daily operations of the Corporation and also has substantial management responsibilities. In view of the considerable time and effort which he provides in managing the Corporation, James W. Pellerin desires a controlling interest in the voting common stock of the Corporation. The remaining stock holders recognize the substantial benefits to the Corporation resulting from the exceptional services provided by James W. Pellerin in his capacity as president and general manager of the Corporation. Curtis A. Pellerin, Julie Pellerin Bukrey and Renee M. Pellerin, who have expressed their lack of interest in taking an active part in the management of the Corporation are unwilling to terminate their investment in order to give up control of the voting common stock. On the other hand, they realize that their investment in the Corporation can be best protected by having James W. Pellerin as the president and general manager, with control of the voting common stock to provide a greater financial incentive through an increased share in the future appreciation and growth of the Corporation and to allow greater efficiency and economy in the management of the Corporation's business. In addition, they desire the assurance of a substantial annual income from their continued investment in the Corporation. All the shareholders have expressed the opinion that the present capital structure could be detrimental to the future growth and welfare of the Corporation.
Mrs. Pellerin contends that this increased ownership interest is a form of compensation granted to James in return for making his services available and therefore is community property. Cynthia Pellerin claims that James Pellerin acquired "property" within the meaning of La.C.C. art. 2338, i.e., "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse ..." which is capable of being assigned a pecuniary or monetary value. Due v. Due, 342 So.2d 161 (La.1977). Mrs. Pellerin assigns a value of $2,000,000.00 as her one-half of the community asset based on her former husband's increased controlling interest in PLMSCO during the marriage.
James Pellerin maintains that he did not receive any additional shares of stock as a result of the recapitalization plan. He asserts that the controlling interest of stock ownership cannot exist separate and apart from the stock itself. On claiming no value could be assigned to his controlling interest in PLMSCO, James Pellerin notes that PLMSCO was totally dependent on the Pellerin Milnor Corporation (Milnor), which manufactures the products that PLMSCO *1253 sells. Therefore, his authority and control were restricted to managing the PLMSCO business. Increase in his ownership interest benefited the Pellerin family, enabling him to have the power to run the company. Additionally, the other siblings could exchange their preferred stock for common stock if they became active in the business, making James' control temporary. James Pellerin asserts that he was more than reasonably compensated by his salary and bonus, which became part of the community regime.
Louisiana courts have recognized intangible rights resulting from a spouse's labor and industry as community assets. An attorney's contingent fee contracts are such "property" which can be assigned value and is an asset of the community. Even if dependant on a future event, value is based on the attorney's services rendered during the marriage. Due v. Due, supra.
In commercial business, goodwill is a property right which can exist as an asset in itself, which can be included in valuation of a business in a community property partition proceeding. Godwin v. Godwin, 533 So.2d 1009 (La.App. 1st Cir.1988), writ denied, 537 So.2d 1165 (La.1989). However, this court found that a husband's stock in the Steamship Pilots Association of which he was a member, was worth no more than the $100.00 he paid for the stock and would receive on his resignation or death. Although stock in the association represented the capability of future earnings, it was not a community asset to be partitioned but a factor to be considered in determination of permanent alimony. Taylor v. Taylor, 473 So.2d 867 (La.App. 4th Cir.1985), writ denied 477 So.2d 1126 (La.1985).
The party claiming reimbursement for enhancement of value of separate property upon dissolution of the marriage has the burden of proving that the increase in value of the spouse's separate property is a result of uncompensated common labor and industry of the spouses. La.C.C. Art. 2368. Guarisco v. Guarisco, 526 So.2d 1126 (La.App. 1st Cir.1988), writ denied, 523 So.2d 1337 (La.1988). Although there was an increase in James Pellerin's controlling interest, it was not an asset by itself but was tied as an integral part of the position of president of PLMSCO. It served as an incentive for James to assume the position as head of the company because he had the control to manage the business, a necessary component of the office.
Article 2368 of the Louisiana Civil Code provides:
If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increased attributed to the common labor.
In Guarisco, supra, the husband's stock bought prior to his marriage dramatically increased in value after he became president. That court found that the claimant spouse failed to show what the value of the husband's interest would have been had the community not provided uncompensated labor or industry. Nor did she establish that her former husband had not been adequately compensated. See also Beals v. Fontenot, 111 F.2d 956 (5th Cir.1940); Phillips v. Wagner, 470 So.2d 262 (La.App. 5th Cir. 1985) writ denied, 474 So.2d 948 (La.1985).
This court is persuaded that the community was adequately compensated for James Pellerin's labor and industry by virtue of his salary and bonus. Henry Cooper, found to be an expert in finance, accounting and evaluation of closely held corporations, testified that a higher salary was paid to both James Pellerin and Jake Mathey than normal and a buyer could replace them with cheaper management. John McGrath, general manager of A.A. Harmon & Company, who originally drew up the plan of recapitalization noted that PLMSCO's management salary and incentive bonus arrangement provided compensation to the community. Daniel D. Lawrence, James Pellerin's expert witness in the field of executive compensation, concluded that James Pellerin was paid very well in relation to his peers, and any increase *1254 in controlling interest that James Pellerin acquired benefited the community.
Cynthia Pellerin has failed to carry her burden of proof that Mr. Pellerin was not reasonably compensated or that there was any increase in the PLMSCO stock as a result of uncompensated labor.
Cynthia Pellerin also claims that PLMSCO unreasonably withheld dividends on the common stock which would have become community property during the marriage. Testimony of the expert witnesses indicates that PLMSCO's working capital ratios were high but that the company's auditor monitored the accumulated earnings taxes to be within IRS guidelines. Expert John McGrath pointed out that PLMSCO was in a 50% tax bracket. For each $100.00 paid in dividends, $50.00 would have to be paid in taxes. Mark Munson, qualified as an expert in the field of accounting and business valuation, testified that it was typical of small family corporations not to pay dividends on common shares. C.P.A. Wiley Lefdwich, referred to a double tax problem if dividends were issued. Norvin Pellerin asserted that dividends were never paid on common stock in any of the three family businesses, PLMSCO, Pellerin Milnor Corporation or Norvin Realty Company. Additional testimony reveals that the company retained liquid assets for exposure to at least two lawsuits. Mrs. Pellerin has failed to show that PLMSCO's refusal to pay dividends was capricious or retained to deprive the community.
For the above reasons, the judgment of the trial court is affirmed. All costs are to be paid by Cynthia Pellerin.
AFFIRMED.