653 So.2d 133 (1995)
Pamela Dove ALFORD, Plaintiff-Appellee,
v.
Kenneth Ray ALFORD, Defendant-Appellant.
No. 94-1464.
Court of Appeal of Louisiana, Third Circuit.
April 5, 1995.
Charles Wilson Seaman, Natchitoches, for Pamela Dove Alford.
Charles Raymond Whitehead Jr., Natchitoches, for Kenneth Ray Alford.
Before YELVERTON, SAUNDERS and SULLIVAN, JJ.
SULLIVAN, Judge.
This is a community property partition suit brought pursuant to La.R.S. 9:2801. Pamela and Kenneth Alford were married on July 22, 1989. The parties physically separated on February 22, 1992, and Pamela filed a petition for divorce on March 3, 1992. The trial court rendered a judgment of divorce on February 23, 1993 and signed same on March 17, 1993.
Two days later on March 19, 1993, Pamela filed a petition to partition the community property. Each party filed sworn detailed descriptive lists of community assets and liabilities in compliance with La.R.S. 9:2801. Trial on the merits was held on February 2, 1994. The parties stipulated to the value of several of their assets. After accepting the stipulation, the trial court was left to resolve the values of the following items:
1) family home in Vienna Bend Subdivision;
2) cash located in the family home;

*134 3) Wal-Mart stock;
4) Kenneth's body shop tools and equipment;
5) Pamela's Wal-Mart profit sharing plan;
6) Pamela's payment of the mortgage indebtedness on the family home;
7) proceeds from Pamela's personal injury settlement.
The trial court rendered reasons for judgment on June 2, 1994 and signed judgment on August 8, 1994 in favor of Pamela for $4,080.22 plus interest from the date of judicial demand until paid.
Kenneth appeals and asserts that the trial court erred in the following respects:
1) failing to classify the Wal-Mart profit sharing plan as community property;
2) valuing the home at $65,300.00 instead of $78,000.00;
3) valuing the body shop tools at $12,000.00 instead of $3,000.00;
4) rejecting Kenneth's testimony concerning the amount of money in the home safe ($8,800.00) and accepting the amount ($9,700.00) asserted by Pamela.
For the following reasons, we reverse the trial court's decision insofar as it failed to recognize that the portion of the Wal-Mart profit sharing plan which accrued during the existence of the marriage is community property. In all other respects, we affirm.

PROFIT SHARING PLAN
Pamela testified that, as of the date of trial, she had been working for Wal-Mart for twelve and one-half (12½) years. She is a district manager of the jewelry and Ushoe departments. Pamela stated that the profit sharing plan was in existence and that she was a participant therein at the time of her marriage to Kenneth. All funds in the plan are placed there by Wal-Mart and contributions are based solely on Wal-Mart's profitability at the end of each fiscal year. The amount of the annual contribution is completely at the discretion of the Wal-Mart board of directors. The contributions are not dependent upon Pamela's performance as an employee, and, under plan rules, she is prohibited from contributing directly to her account.
Plaintiff's exhibit number 12, which was introduced into evidence in conjunction with Pamela's testimony is a statement of the value of Pamela's account from Debbie Davis Campbell, the director of Wal-Mart's profit sharing trust. The statement reflects that, on July 31, 1989 (eight days after the marriage), the account value was $17,855.06. As of January 31, 1992, the account value had risen to $49,444.11. Pamela's attorney represented to the trial court that further inquiry had been made to Wal-Mart in an effort to acquire more explanatory information. The parties agreed to leave the record open for receipt of the correspondence from Wal-Mart.
Plaintiff also entered into evidence the Wal-Mart Benefits Book which, in pertinent part, describes the profit sharing plan. Wal-Mart makes yearly contributions to the plan based on its profitability. As a general rule, the specific amount deposited in each employee's account is not to exceed twenty-five percent (25%) of the particular employee's annual compensation. An employee can lose benefits through forfeiture, i.e., termination of employment before the employee is fully vested (seven years), and through investment losses. Additionally, the profit sharing plan is not insured by the Pension Benefit Guaranty Company because it is not a "defined benefit" plan.
The record indicates further that Wal-Mart's April 14, 1994 response to plaintiff's inquiry was received by plaintiff on April 25, 1994 and filed into the record on April 27, 1994. The correspondence, authored by Wal-Mart profit sharing trust director Debbie Davis Campbell, indicates that the information contained in the previous statement dated July 30, 1992 (plaintiff's exhibit number 12) is correct. Campbell further explains that the valuation dates used (July 31, 1989; January 31, 1992) are the closest possible valuation dates to the date of marriage (July 22, 1989) and the date of filing of the divorce petition (March 3, 1992). Additionally, Campbell represents in the letter that "Our Profit Sharing Plan is the only retirement plan that Wal-Mart offers." (Emphasis ours.)
*135 The trial court determined that, since the profit sharing plan was in existence prior to the marriage, it is Pamela's separate property. The trial court specifically found that the profit sharing plan is not a pension and, due to this finding, refused to apply the Sims v. Sims, 358 So.2d 919 (La.1978) and progeny formula. Instead, the trial judge applied La.C.C. art. 2368[1] and the jurisprudence applying said article[2] to hold that, because the increased value of the profit sharing plan during the marriage was not due to the uncompensated common labor and industry of the spouses, Kenneth has no right to claim a proportionate ownership interest in the profit sharing plan.
Simply stated, the trial court erred in this respect. For the following reasons, we conclude that Pamela's Wal-Mart profit sharing plan is a community asset to the extent of the portion which accrued during the existence of the community.
In Hare v. Hodgins, 586 So.2d 118, 122 (La.1991), the Supreme Court of Louisiana stated:
This court decided in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La. 1976) that an employee's contractual pension right is not a gratuity but a property interest earned by him.

To the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La.Civ.Code art. 2338; Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). Consequently, when the community is terminated, the employee's spouse is entitled to be recognized as the owner of one-half of the value attributable to the pension or deferred compensation right earned during the existence of the community. La.Civil Code art. 2336; La.R.S. 9:2801 (1991); Sims, supra at 923-24; T.L. James & Co., supra; see generally Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); Moon v. Moon, 345 So.2d 168 (La.App. 3d Cir.) writ denied, 347 So.2d 250 (1977); Swope v. Mitchell, 324 So.2d 461 (La.App. 3d Cir. 1975); Lynch v. Lawrence, 293 So.2d 598 (La.App. 4th Cir.) writ denied, 295 So.2d 809, 814 (1974); Laffitte v. Laffitte, 253 So.2d 120 (La.App. 2d Cir.1971). Correlatively, if part of the employee's pension right was earned before or after the existence of the community, that part of the pension right must be classified as the employee's separate property (or as property of a different marital regime) and separated from the community property interest to be divided. La.R.S. 9:2801 (1991); T.L. James & Co., Inc. v. Montgomery, supra. (Emphasis ours.)
Applying these principles to the facts of the present case, it is clear that Pamela's Wal-Mart profit sharing plan is in fact a pension or retirement plan. Campbell's April 14, 1994 letter specifically states that the profit sharing plan is Wal-Mart's only retirement plan. In finding otherwise, the trial court erroneously relied upon the facts that Pamela cannot contribute and that contributions are based on Wal-Mart's profitability and not Pamela's performance. The key factor is whether the right is derived from the spouse's employment during marriage. We perceive this to be a broad criterion which is not to be determined on the basis of specific rules of contribution. Simply put, if the right accrues from the spouse's employment during marriage, it is, to that extent, a community asset subject to division upon dissolution of the marriage. It is clear that, in this case, Pamela's right to the profit sharing plan did accrue as a result of her employment with Wal-Mart during her marriage *136 to Kenneth. Accordingly, Kenneth is entitled to recognition as owner of one-half of the value of the profit sharing right earned during the existence of the community.
Kenneth asserts on appeal that we apply the Sims formula to determine his ownership interest in the profit sharing plan. While we agree that the Sims formula is applicable, we find that the record is lacking sufficient information for this court to determine Kenneth's proportionate ownership interest. Specifically, the record is unclear as to the total length of time Pamela worked toward earning this pension. She did state that, as of the trial date, she was employed by Wal-Mart for twelve and one-half (12frac12;) years. However, she did not specifically state the length of time during which she had participated in the Wal-Mart profit sharing plan. Additionally, no documentary evidence introduced into the record shows the extent of her participation. Without more specific information, we cannot in this opinion presume that Pamela participated in the profit sharing plan during all of her twelve and one-half (12½) years of employment with Wal-Mart. We therefore remand this case to the trial court for a factual determination of the total length of time of Pamela's participation in the profit sharing plan. Further, we order the trial court to apply the Sims formula to determine Kenneth's proportionate ownership interest in the profit sharing plan.

FAMILY HOME
Kenneth asserts the trial court erred in failing to value the family home at $78,000.00, the amount designated in the appraisal which he submitted. The court set the value of the home at $65,300.00. The home was purchased on December 4, 1990 for $63,500.00. On the date of sale, the house and lot upon which it is located was appraised by Martha Norred at a value of $67,500.00.
For purposes of partition, Pamela presented the December 11, 1992 appraisal of Norred, which reflected a value of $56,500.00. Kenneth presented an appraisal performed by Randy LaCaze, which reflected a value of $78,000.00. The trial judge rejected both figures as "unrealistic" and declared that he suspected that "the nature of this litigation and personal pressures on these otherwise reliable appraisers caused both of them to depart from their normal helpful appraisal practices." The trial court instead accepted the $65,300.00 assessed value, as determined by the Natchitoches Parish assessor, as the fair market value of the home. The assessment listing was included as an attachment to LaCaze's appraisal.
It is well settled that, in valuing assets, the trial court is not required to accept, at face value, the valuation placed on assets by either spouse. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. We conclude that the trial court's valuation of the home was not an abuse of its discretion. Pamela's appraisal depicts an unrealistic depreciation of $11,000.00 over a two (2) year period, while Kenneth's appraisal reflects an equally unrealistic appreciation of $10,500.00 over a thirty-two and one-half (32½) month period. Our examination of the record reveals no clear error in the trial court's acceptance of the $65,300.00 assessed value as the fair market value, especially since the house was purchased three and one-half (3½) years before trial for $63,500.00.

BODY SHOP TOOLS
Kenneth asserts that the trial court erred in valuing the tools and equipment in his body shop at $12,000.00 as urged by Pamela instead of $3,000.00 as urged by Kenneth. In so ruling, the trial court relied on the parties' 1989 and 1990 United States Income Tax Returns in which Kenneth valued his tools and equipment at $12,056.68. A handwritten inventory of the tools and their respective values was attached to the tax return.
The trial court, in its reasons, noted Kenneth's lack of credibility on this issue. At trial, Kenneth stated that some of the tools were acquired before he opened his body shop business in August 1989, within a month of the marriage. He represented differently on the tax return. Additionally, on cross examination, Kenneth admitted that, in order to reduce his tax burden, he included an *137 $1,800.00 air compressor on the equipment list which did not belong to him.
The trial judge was faced with a choice between two conflicting valuations of the body shop tools and equipment. He chose to believe Pamela and to not believe Kenneth. The trial court's reasons for doing so, based on a credibility determination, are amply supported by the record and do not constitute an abuse of discretion. Under the standard of appellate review enunciated in Rosell v. ESCO, 549 So.2d 840 (La.1989) and reiterated in Stobart v. State, DOTD, 617 So.2d 880 (La.1993), we cannot say that the trial court erred in valuing the tools and equipment at $12,000.00.

CASH IN HOME
Kenneth next contends that the trial court erred in placing a $9,700.00 value on cash in the safe at the home. He urges the correct amount to be $8,800.00. The trial court accepted Pamela's figure on this issue in part because of Kenneth's "suspect" credibility resulting from his aforementioned conflicted testimony on the value of body shop tools and equipment.
Pamela stated that she witnessed Kenneth place $5,300.00 in the safe during the marriage and an additional $4,400.00 during the three (3) or four (4) week period before separation. Kenneth stated that he accumulated approximately $4,000.00 during the marriage. He agreed that he placed $4,400.00 in the safe during the few weeks preceding the physical separation. He stated that the latter amount was cash paid by two of his cousins, Gloria Jean Bennett Mitchell and Dion LeBlanc, for the repair of their automobiles. He stated that, when customers would pay in cash, he would keep the money in the safe.
The parties only disagree on the amount accumulated during the marriage and not the $4,400.00 added near the end of the marriage. This is clearly another credibility determination which the trier of fact is best situated to make. Faced with two permissible views of the evidence, the trial court chose to believe Pamela's version. We cannot say that the trial court manifestly erred in valuing the cash at $9,700.00.

DECREE
For the above reasons, we reverse the trial court judgment insofar as it failed to classify that portion of the Wal-Mart profit sharing plan attributable to the marriage as community property. Further, we remand this case to the trial court for it to determine the total length of Pamela Alford's employment time during which she participated in the profit sharing plan and for a determination of Kenneth Alford's proportionate ownership interest therein in accordance with this opinion. In all other respects, we affirm.
Costs of this appeal are to be divided equally amongst Pamela Alford and Kenneth Alford.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] La.C.C. art. 2368, entitled "Increase of the value of separate property" provides:

If the separate property of a spouse has increased in value as a result of the uncompensated common labor or industry of the spouses, the other spouse is entitled to be reimbursed from the spouse whose property has increased in value one-half of the increase attributed to the common labor.
[2] Pellerin v. Pellerin, 550 So.2d 1250 (La.App. 4 Cir.1989); Guarisco v. Guarisco, 526 So.2d 1126 (La.App. 1 Cir.1988) writ denied, 523 So.2d 1337 (La.1988); Phillips v. Wagner, 470 So.2d 262 (La.App. 5 Cir.), writ denied, 474 So.2d 948 (La. 1985).